. VIENNA HART

*v.*

ELIZABETH RANDOLPH.

*Filed at Springfield November 2, 1892.*

. 142    521
185    605
185    606
185    611
142    521
100a ⁶ 49
142    521
198  ³ 72

1. HOMESTEAD — *abandonment thereof.* A husband conveyed his homestead in 1869, his wife not joining in the deed, and he and his wife and the whole family left the place in the possession of the purchaser and removed to a farm, and none of them returned to the old home, or made any attempt so to do, or claimed it as a home, for about twenty years: *Held*, that this was an abandonment of the homestead.

2. ACKNOWLEDGMENT OF DEED — *certificate is insufficient to release dower.* A certificate of the acknowledgment of a deed by a husband and wife which fails to show that the wife was personally known to the officer to be the person therein named, is insufficient to release the wife's dower in the premises.

3. DOWER — *barred by Statute of Limitations.* The remedy for the assignment of dower is barred, under section 6 of the Statute of Limitations, by seven years' possession under color of title and payment of all taxes legally assessed on the land.

4. SAME — *strictness of proof required to sustain the bar of the statute.* The same strictness of proof that is required in order to make out the bar of the statute in actions of ejectment is required to sustain the bar when it is interposed as an objection to a claim of dower.

5. DEED — *absolute or as a mortgage — effect of lapse of time as proof.* About four months after the execution of a note and mortgage on lots the mortgagor gave the mortgagee a quit-claim deed of the premises, and put him in possession, which the latter kept for over twenty years, claiming and treating the land as his own, making improvements from time to time, and paying the taxes. The grantor lived twelve years after the date of the deed, and in the immediate vicinity, and never claimed the property or called on the grantee for an accounting, and his widow and heir made no such claim until about eight years after the grantor's death: *Held*, that these facts afforded strong evidence that the conveyance was an absolute one in satisfaction of the debt.

6. SAME — *declarations of grantor to impeach the deed — inadmissible.* The declarations of a grantor to the effect that his deed was intended as a mortgage or security, and that he had turned the property over to his grantee to keep until he got his money out of it, and that the grantee was then going to give it back, are clearly inadmissible as evidence in behalf of the grantor's widow and heir against the grantee or

his heir-at-law. The law does not permit one, by making statements favorable to his own interest, to manufacture evidence for himself.

7. The declarations of a grantor after the making of his deed and before the actual surrender of possession, made in derogation of the title he has conveyed, are not admissible against the grantee or one claiming under him. Such delarations, not explanatory of the character of the possession held by him or in disparagement of his own title, are wholly inadmissible in favor of his widow and heir-at-law.

8. It is well settled that the declarations of a grantor, made either before or after the execution of the deed, are not admissible for the purpose of impeaching the same.

9. TAXES—*purchase of land at a tax sale, or redemption, not a payment of taxes.* A purchase of land at a tax sale is not a payment of the tax within the meaning of the Statute of Limitations, nor is redemption from the tax sale such a payment.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. JAMES T. HUGHES, Judge, presiding.

Messrs. CLARK & CLARK, for the plaintiff in error.

Mr. EMERY ANDREWS, for the defendant in error.

Mr. JUSTICE BAKER delivered the opinion of the Court:

The substance of the bill of complaint of Vienna Hart, plaintiff in error, is, that she is the widow of Thomas Hart, who died on the 25th day of May, 1881; that said Thomas was the owner in fee simple of lots 5 and 6, in block 176, in the city of Mattoon, Illinois, and on the 25th day of January, 1869, mortgaged them to one Samuel Neff, to secure a promissory note for $1000, given for borrowed money; that afterwards the said Thomas made and delivered to the said Neff a quit-claim deed for the premises, bearing date May 17, 1869, which deed was in fact a mortgage to secure said loan, and that under said deed said Neff took possession of the lots as mortgagee, and remained in possession as mortgagee from thence to the time of his death, and that since his death, Elizabeth Randolph, his widow, in like manner remained in possession until plaintiff in error took possession of the prop-

erty, and that she, plaintiff in error, is now in possession and claims the property. The bill then avers that upon the back of the deed dated May 17, 1869, appears a certificate of acknowledgment, which certificate is set out *in hæc verba* in the bill. Plaintiff in error alleges that she never signed nor acknowledged said deed, or any other deed for the premises, and charges that the certificate of acknowledgment is not sufficient in law to bar her of dower or of her homestead, and that at the time of the execution of the deed the premises were the homestead of her now deceased husband and herself. It is also stated in the bill that Samuel Neff afterwards died, and left as his sole heir and legatee, his widow, the defendant in error, who has since intermarried with one Randolph; and that said defendant in error claims to be the owner of said lots, and to be entitled to the possession of them under the pretended conveyance of May 17, 1869, and that she, said defendant in error, has instituted proceedings before a justice of the peace for possession of said premises, charging plaintiff in error with forcible detention. The prayer of the bill is, that the forcible detainer suit may be enjoined, and that upon the hearing dower and homestead in the premises may be assigned and set off to her, said plaintiff in error, and for an accounting of the rents and profits from the time of possession of said Neff, and that the same may be applied, after payment of taxes and necessary improvements, toward the discharge of the mortgage indebtedness, with interest thereon, and that should the same not be sufficient to fully discharge the mortgage indebtedness, then that plaintiff in error should be permitted to pay the remainder, and for other and further relief, etc.

The answer of defendant in error admits that plaintiff in error is the widow of Thomas Hart, that the latter was the owner in fee simple of the lots prior to May 17, 1869, and that a mortgage was given thereon to secure $1000 borrowed money, and shows that plaintiff in error joined in the execu-

tion of said mortgage, waiving and relinquishing her dower and homestead rights. Said answer states that on May 17, 1869, said Thomas Hart and plaintiff in error made, executed and delivered to Neff the quit-claim deed to the premises in full satisfaction of the indebtedness secured by the mortgage and in satisfaction of other indebtedness, and denies that said deed was intended as a mortgage, and states that it was intended as an absolute conveyance of the title, and that said Thomas Hart and plaintiff in error removed from the premises and put said Neff in absolute possession of the property as grantee and owner under the deed, and not as mortgagee. The answer also denies that there was any intention on the part of plaintiff in error and her husband to return to the premises and occupy them as their homestead. It admits the death of Neff, and that defendant in error is his widow, legatee and sole heir, and states that from the time of the making of the deed, and possession taken thereunder, said Neff and herself had continuous, open, peaceable and adverse possession of the lots, and made improvements on the same, and paid all taxes assessed against them from year to year. It admits that plaintiff in error took possession, but claims that it was a forcible and unlawful possession; and the answer also avers that if plaintiff in error ever had any right of dower or homestead right in the premises, the same has long since been barred in equity and by the Statute of Limitations.

Upon a hearing had upon the bill, answer, replication, exhibits and proofs, a decree was entered dismissing the bill at the costs of the plaintiff in error.

The statements made by Mr. Hart that are testified to by his widow and daughter, to the effect that the deed was intended as a mortgage or security, and that he had turned the property over to Mr. Neff to keep until he got his money out of it, and that Neff was then going to give it back, were very clearly incompetent testimony as against either Neff, or defendant in error, who claims under Neff's title. The law does

not permit one, by the mere process of making statements favorable to his own interests, to manufacture evidence for himself.

It is suggested by counsel that some of the declarations were made while Thomas Hart was still in possession of the house and lots, and that they are therefore admissible. We suppose reference is made to the testimony of the daughter that certain specified declarations were made by her father "before we moved out of the property." It may be, said statements were prior to the removal of the family from the house, but *non constat* that they were before the execution and delivery of the quit-claim deed. In fact, the form of the declaration, that "he had turned over the property," etc., indicates that the title had already passed by the deed. It would be strange, indeed, if one could make declarations in derogation of the title that he had already conveyed, that would be evidence against his grantee, and upon the ground that the grantor had not yet surrendered actual possession of the premises to his grantee. But, besides this, the declarations made were not explanatory of the character of the possession held by the father, or in disparagement of his own title, and were therefore wholly inadmissible as evidence. It is well settled that the declarations of a grantor, made either before or after the execution of the deed, are not admissible for the purpose of impeaching the same. *Dickie* v. *Carter*, 42 Ill. 376; *Massey* v. *Huntington*, 118 id. 80; *Guild* v. *Hull*, 127 id. 523.

Other than is above indicated, there is no evidence whatever tending to prove that the deed was intended as a mortgage. On the other hand, the circumstances of the case, the fact that Neff and defendant in error were in actual possession of the premises for some twenty years, claiming and treating them as their own, making improvements from time to time and paying the taxes, and the fact that Thomas Hart lived for twelve years after the making of the deed, and in the immediate vicinity, and never claimed the property or called on

Neff for an accounting, and that plaintiff in error made no such claim until about eight years after his death, seem to show quite conclusively that the deed was made by Thomas Hart and received by Neff in full satisfaction and payment of the mortgage indebtedness, and this view is corroborated by the testimony of Mr. James W. Craig, who testifies that he was attorney for Neff, and that his recollection is that the deed was given to settle up matters between Mr. Neff and Mr. Hart.

The claim of plaintiff in error that she has a homestead right or estate of homestead in the premises can not prevail. The husband sold and conveyed the property in 1869, and he and his wife, the plaintiff in error, and the whole family, left the place in the possession of the purchaser, and removed to a farm, and none of them returned to the old home or made any attempt so to do, or, so far as appears, claimed it as a home, for about twenty years. Surely, this was an abandonment of the homestead.

The claim of dower stands upon a better footing. Plaintiff in error testifies positively that she never signed, executed or acknowledged the deed, that the signature to it is not in her handwriting, and that she refused, when urged by her husband, to join in its execution. Her daughter, Mrs. Eldridge, and J. N. Wilson, who is not related to any of the parties, both testify that when the deed was brought for Mrs. Hart to sign, she refused to do so. There is no proof whatever that the name signed to it is in her handwriting, or any proof tending to show its execution by her, other than that afforded by the certificate of acknowledgment and the testimony of the justice of the peace whose signature is attached to such certificate. All that the justice swears to is, that the signature to the certificate is his signature; that he does not remember anything about it; remembers going out to take the acknowledgment of some paper where the Harts lived, just over the line, in Cumberland county, but does not remember anything about what it was. But, waiving all this, the cer-

tificate of acknowledgment wholly fails to state that Vienna Hart was personally known to the officer taking the acknowledgment. The certificate was just like that found in *Heinrich* v. *Simpson*, 66 Ill. 57. It was there held, that in order to make a deed of the husband's real estate, executed by him and his wife, operative as a valid release of the wife's dower, it is necessary that the certificate of her acknowledgment should show that she was personally known by the officer taking the same to be the person named in the deed. Of like import are the cases of *Gore* v. *Cather*, 23 Ill. 634, *Tully* v. *Davis*, 30 id. 103, *Lindley* v. *Smith*, 46 id. 524, *Sheldon* v. *Patterson*, 55 id. 507, and *Becker* v. *Quigg*, 54 id. 390. The same statute was in force when this deed was executed, and said deed is governed by the same rule, and so the deed was not operative to release the dower of plaintiff in error.

The right to dower in the premises did not become consummate until the death of her husband, in 1881. It then became the duty of Samuel Neff, or of defendant in error, to lay off or assign her dower. This duty was not performed. On the 25th day of May, 1881,—a month after the death of said husband,—the right accrued to plaintiff in error to sue for and recover dower. But she did not bring suit until this bill was exhibited, on the 23d day of September, 1889. It has frequently been decided that the remedy for assignment of dower is barred, under section 6 of the Statute of Limitations, by seven years' possession under color of title and payment of all taxes legally assessed on the land. (*Owen* v. *Peacock*, 38 Ill. 33; *Stowe* v. *Steele*, 114 id. 382; *Brian* v. *Melton*, 125 id. 647.) The same strictness of proof that is required in order to make out the bar of the statute in actions of ejectment is required to sustain the bar when it is interposed as an objection to a claim of dower. (*Stowe* v. *Steele, supra*.) Here it affirmatively appears from the testimony that defendant in error did not pay the taxes legally assessed on the lots for seven successive years since plaintiff in error's right to dower

became consummate, but that one year of the seven she failed so to do, and that the taxes of that year were paid by the sale of the lots. It does not appear whether she or another was the purchaser at such tax sale, or whether or not she redeemed from such sale. But these matters are immaterial. A purchase of the land at the tax sale is not a payment of the tax within the meaning of the statute, (*Irving* v. *Brownell,* 11 Ill. 402, *Woodruff* v. *McHarry,* 56 id. 218,) nor is redemption from the tax sale such a payment. (*Holbrook* v. *Dickenson,* 56 Ill. 497.) It follows, therefore, that the bar of the statute was not in this case made out, and can not be made out..

The findings and decree of the circuit court were in all things right, except in its failure to find and decree that plaintiff in error was entitled to dower in the lots. It was error to not so find and decree, and it was error to dismiss her bill of complaint.

The decree is reversed and the cause remanded, with directions to enter a decree giving her dower in the premises.

*Decree reversed.*