260 P.2d 919

**SARGENT et al. v. HAMBLIN et al.**

**No. 5620.**

Supreme Court of New Mexico.

Sept. 4, 1953.

Harry L. Bigbee and Donnan Stephenson, Santa Fe, Quincy D. Adams, Albuquerque, for appellants.

Seth & Montgomery and William R. Federici, Santa Fe, for appellees.

LUJAN, Justice.

The parties in this opinion will be referred to as plaintiffs and defendants as they appeared in the lower court. On May 8, 1951, plaintiffs filed suit against the defendants, Ursula Looney Hamblin and Frank L. Hamblin, her husband, to remove a cloud on their title, and to quiet their title, to a certain tract of land, containing 20,537 acres, located in Rio Arriba County.

They alleged that they owned and were in possession of the land described in their complaint, and that they had obtained title through a warranty deed from the defendants, and one John Looney, dated February 9, 1926. That on December 30, 1926, the defendant, Ursula Looney Hamblin, solely, prepared a statement which was acknowledged in the State of Texas, and was on January 20, 1927, recorded in the records of the County Clerk's office of Rio Arriba County. That said statement recites that the conveyance of the property in question was as security for money loaned to the grantors by the grantees. That the matters and things set out in said "agreement" of the defendant, Ursula Looney Hamblin, are false and untrue, and constitute a cloud upon their title. That since the recording of said statement, the defendants had made no claim of title or of interest in or to the lands described in their complaint until the month of April, 1951, and that they are credibly informed and believe that the defendants do now make some claim adverse to their title.

The defendants, by their answer denied the allegations that plaintiffs made relating to their title; denied that the matters set out in the statement made by the defendant, Ursula Looney Hamblin, were false and untrue; and denied the allegations which alleged that from 1926 to April, 1951, they had made no claim to the title, and then by affirmative defenses alleged that the warranty deed given by them to the plaintiff, Edward Sargent, was intended to serve as security for a loan.

Plaintiffs filed reply denying all the material allegations of the amended answer and affirmative defenses.

On June 15, 1951, the defendants made a demand for a jury trial. On July 23, 1951, the plaintiffs moved the court to strike the demand for jury trial. On September 17, 1951, the court made and entered an order overruling the motion made by plaintiffs, and ordered the issues to be tried by jury. On June 30, 1952, at the beginning of the trial the court made the following observation:

"It is further stipulated that the only question to be submitted to the jury is the question of the intent in the minds of the parties at the time of the execu-

tion of the instrument known as Plaintiffs' Exhibit A." (Warranty Deed)

"Mr. Adams: So stipulated.

"Mr. Seth: So stipulated."

Mr. Adams, attorney for defendants, in his opening statement to the jury, stated:

"* * *. There is too much for me to tell you about all these things now, but I want you to bear in mind the *principal and main* thing that is questioned in this case, whether or not in 1926 it was the intention of Mr. Sargent and Mrs. Hamblin that this transaction was a loan or whether it was an actual sale of the property. We contend and we believe that we will show that it was only a loan, and the plaintiffs, Mr. and Mrs. Sargent, will contend that it was a bonafide sale in good faith. Now that, ladies and gentlemen, is the question that we want you to answer after you hear all of the witnesses in the case and read or considered these various documents which will be introduced in evidence."

The court, among other instructions, instructed the jury that:

"The only question for you to decide in this case is as follows: Did the parties at the time of executing the instrument in question intend to create a mortgage on the land known as 'The Horse Lake Ranch' or did they intend to transfer ownership of the same."

The defendants did not object to this or any other instruction given by the court. The jury returned a verdict finding the issues in favor of the plaintiffs and against the defendants. Thereafter, following the receipt of the verdict plaintiffs and defendants submitted findings of fact and conclusions of law which were denied in so far as they were in conflict with those made by the Court.

The Court found:

"No. 2. That defendants and one John Looney executed and delivered to plaintiffs a warranty deed bearing date February 9, 1926, and was filed for record February 23, 1926, Vol. 23, pages 445–446–448; that said deed appears as Exhibit 'A' attached to the Complaint.

"No. 3. That plaintiffs have been in possession of the land and real estate involved in this action as owner since delivery of the warranty deed from defendants and one John Looney above referred to.

"No. 6. That since the execution and delivery of the warranty deed by defendants to plaintiffs and since the recording of the statement by defendant, Ursula Looney Hamblin, the defendants have made no claim whatever of title or interest in and to the land which is the subject matter of this action, until on or about the month of April 1951, at which time defendants

Hamblin asserted their claim in defense to plaintiffs' Complaint in this cause.

"No. 7. That the plaintiffs made full payment of the purchase price for the lands and real estate involved in accordance with the provisions of the agreement between the parties dated February 6, 1926, which agreement is attached as Exhibit 'B' to defendants' Amended Answer.

"No. 8. That the defendants failed to exercise the option to repurchase in accordance with the agreement dated February 6, 1926, which agreement is marked Exhibit 'B' to defendants' Amended Answer.

"No. 9. The transaction whereby the defendants executed and delivered to plaintiffs a warranty deed dated February 9, 1926, and recorded in Volume 23, Pages 445–446–448, and the agreement dated February 6, 1926, between the parties by which the defendants were granted an option to repurchase up to and including December 31, 1926, constituted a sale and not a mortgage.

"10. That plaintiffs have paid all the taxes upon the land and real estate involved in this cause since the year 1927, and defendants have paid no taxes on the land and real estate since the year 1926.

"11. That the consideration paid by plaintiffs to the defendants at the time the warrant– deed was executed and delivered was adequate and fairly proportioned to the value of the property when considered in the light of the price of the land on an absolute sale.

"12. That the statement filed by the defendant, Ursula Looney Hamblin, in the records of Rio Arriba County in Volume 23, pages 629–630, which statement appears as Exhibit 'B' to the Complaint, constitutes a cloud upon plaintiffs' title; that after the Complaint and Amended Answer were filed but before trial was had in this cause, defendants executed an instrument entitled "Admission of Indebtedness" bearing acknowledgment date of July 16, 1951, which instrument was filed for record in the Office of the County Clerk and Recorder of Rio Arriba County, New Mexico, and introduced in evidence by the defendants at the trial in this cause as Defendants' Exhibit no. 17."

Based upon the above findings of fact the Court concluded as a matter of law:

"3. The warranty deed executed and delivered by defendants to plaintiffs, which deed is dated February 9, 1926, and recorded in Volume 23, Pages 445–446–448, is an absolute deed and not a mortgage or other security for a loan.

"No. 4. That the plaintiffs are the owners in fee simple title in and to the land and real estate described in the Complaint.

"No. 5. That plaintiffs are entitled to have their estate established against the defendants and each of them, and that the said defendants be forever barred and estopped from making any claim of lien or interest or title adverse to the plaintiffs, and that plaintiffs' title be quieted and forever set at rest.

"No. 6. That the statement executed by defendant, Ursula Looney Hamblin, dated December 30, 1926, and recorded in Volume 23, Pages 629–630 and referred to as Exhibit 'B' to the Complaint be set aside, cancelled and held for naught; that the *instrue*ment executed by defendants entitled 'Admission of Indebtedness' bearing acknowledgment dated July 16, 1951 and introduced in evidence as Defendants' Exhibit no. 17 be set aside, cancelled and held for naught."

The record discloses that a Special Master's Report in the case of Samuel S. Thorpe v. John Looney, Frank L. Hamblin, Ursula Looney Hamblin, et al., was filed in the United States District Court For The District Of New Mexico on October 8, 1925. That an order approving the Special Master's Report of sale and granting a deficiency judgment against Frank L. Hamblin, Ursula L. Hamblin and John Looney was filed October 8, 1925, and Decree of Foreclosure was filed June 20, 1925, in said court. On April 16, 1923, John Looney executed a deed to the defendant Ursula L. Hamblin to the premises involved, but this deed was never recorded. Thereafter, and on December 31, 1925, just six months and eleven days after the Foreclosure Decree had been recorded, John Looney executed two deeds to Ursula L. Hamblin, which were recorded with the Clerk of Rio Arriba County, on January 26, 1926. These deeds conveyed title to the real estate involved herein, subject to existing liens, which included the Thorpe Mortgage in the sum of $17,595.86 and taxes due Rio Arriba County in the sum of $8305.50. The record further discloses that John Looney, father of Ursula Looney Hamblin, was in serious trouble in the State of Illinois and needed money very badly to pay for the transcript on appeal to the Supreme Court of that state, which amounted to $4904.19, and which sum was paid to O. O. Askren, as attorney for John Looney by the plaintiff, Edward Sargent.

On February 6, 1926, the following agreement was entered into by and between Edward Sargent and Ursula Looney Hamblin:

"This Agreement, Made this 6th day of February, 1926, between Edward Sargent, party of the first part, and

Ursula Looney Hamblin, party of the second part.

"Witnesseth: That the party of the first part agrees to buy all that land formerly the property of John Looney, more particularly described in that certain Decree of Foreclosure entered on the 20 day of June, 1925, in the United States District Court for the District of New Mexico in that cause entitled Samuel S. Thorpe, Plaintiff, vs. John Looney, et al, Defendants, and being No. *1461* Equity, on the docket of said court, on the terms and conditions following, to-wit:

"1. The party of the second part will convey said property by Warranty Deed executed by herself, her husband and John Looney, and by any other person having any interest in said property, other than a claim of lien thereon.

"2. The party of the second part will procure proper abstract of title running from The Arlington Land Company to date and submit same for the examination of the party of the first part and his attorney.

"3. The party of the second part will procure proper releases of any and all judgments or other liens on said property, except the judgment in favor of Samuel S. Thorpe in the above entitled cause.

"4. The party of the second part will procure an adjustment of all taxes heretofore levied on said property, and now delinquent, including the first half of the taxes for the year 1925.

"5. Upon furnishing the aforesaid deed and abstract, the releases aforesaid and a copy of the judgment of a court of competent jurisdiction, adjusting the taxes as aforesaid, within thirty days from the date of this agreement, the party of the first part will cause said instruments to be examined within five days from the receipt thereof, and if satisfactory to J. O. Seth, the attorney for the party of the first part, the party of the first part will pay for said premises at the rate of $1.50 per acre thereof, provided, however, that the party of the first part in such event shall pay the tax judgment aforesaid and the sum necessary to redeem said lands from the foreclosure in the aforesaid cause of Samuel S. Thorpe vs. John Looney, et al, and the amount so paid by him shall be deducted from the purchase price and the balance paid over to O. O. Askren as attorney for the party of the second part, whose receipt therefor shall be a full acquittance and discharge of the party of the first part for said consideration; provided, however, that the party of the first part shall in no event be liable to pay a sum greater than $1.50 per acre and if the amounts to be paid by him as aforesaid

shall be in excess of $1.50 per acre for said land, then this contract shall be of no effect.

"6. Upon the acceptance of said title by the party of the first part and the delivery of the aforesaid deed, the party of the first part shall enter into an agreement with the party of the second part, binding the party of the first part to re-convey all of said premises to the party of the second part or to such person as she may direct, upon repayment to him of the amount paid by him for the premises aforesaid, with interest at 10% per annum; provided, however, that said agreement to reconvey shall give the option to re-purchase up to and including December 31, 1926 and no longer, and provided, further, that in the event of the exercise of said right to repurchase before said date, the party of the first part shall have the right to the possession of the premises described up to and including December 31, 1926, and provided, further, that the part of the first part shall have immediate and peaceable possession of the premises from the date of the payment by him of the consideration herein expressed.

"7. The deed aforesaid shall convey to the party of the first part any and all right of redemption from the foreclosure in the case of Samuel S. Thorpe vs. John Looney, et al., above mentioned.

"Executed in duplicate the day and year first hereinabove written.

(Sgd)   Edward Sargent

(Sgd.)   Ursula Looney Hamblin

"I hereby approve this contract this 16th day of Feb. 1926.

(Sgd.)   John Looney"

On February 9, 1926, a warranty deed was executed and delivered to Edward Sargent by Ursula Looney Hamblin, Frank L. Hamblin, her husband, and John Looney, which recites as follows.

"This Indenture, Made this 9th day of February in the year of our Lord, One Thousand, Nine Hundred and Twenty-six, between Ursula Looney Hamblin and Frank L. Hamblin, her husband, and John Looney, an unmarried man, all of the County of Rio Arriba, State of New Mexico, parties of the first part, and Edward Sargent of Rio Arriba County, New Mexico, party of the second part.

"Witnesseth, That the said parties of the first part, for and in consideration of the sum of Ten ($10.00) Dollars, lawful money of the United States of America, to them in hand paid by the said party of the second part, the receipt whereof is hereby confessed and

acknowledged and the said party of the second part, forever released and discharged therefrom, have granted, bargained, sold, remised, released, conveyed, aliened, and confirmed, and by these presents do grant bargain, sell, remise, release, convey, alien and confirm unto the said party of the second part, and to his heirs, assigns, or successors, forever, all the following described lots and parcels of land and real estate, situate, lying and being in the County of Rio Arriba, State of New Mexico, to-wit:

(Herein description)

"Together with all and singular the hereditaments, lands, tenements and appurtenances belonging or in any wise appertaining and the reversion and reversions, remainder and remainders, rents, issues and profits thereof; and all the estate, right, title, interest, claim or demand whatsoever, of said parties of the first part, either in law or equity, of, in and to the above bargained premises, with the hereditaments and appurtenances;

"To Have and to Hold, the said premises above bargained and described, with the *appuirtenances* unto the said party of the second part, his heirs, successors or assigns forever.

"And the said parties of the first part, for their heirs, executors, administrators, successors or assigns, doth covenant, grant, bargain and agree to and with the party of the second part, his heirs, executors, administrators, successors or assigns, that at the time of the ensealing and delivery of these presents, they are well seized of the premises above conveyed as of a good, sure, perfect and indefeasible estate of inheritance in law in fee simple and have good right, full power, and lawful authority to grant, bargain, sell and convey the same in manner and form aforesaid, and that the same are free and clear from all former and other grants, bargains, sales, liens, taxes, assessments and incumbrances, of what kind or nature soever; and the above and bargained premises, in the quiet and peaceable possession of the party of the second part, his heirs, successors and assigns, against all and every other person and persons lawfully claiming or to claim, the whole or any part thereof, the said parties of the first part shall and will warrant and forever defend.

"And the parties of the first part, for the consideration aforesaid, do further assign, transfer and convey to the party of the second part any and all rights held, owned or possessed by the said parties of the first part or any of them to redeem the premises hereinabove described from that certain foreclosure sale made by Cal McFadden,

Special Master, on September 30, 1925, pursuant to that certain decree of the United States District Court for the District of New Mexico entered in that certain cause entitled Samuel S. Thorpe, plaintiff, vs. John Looney, et al., defendants, and being No. 1461 Equity, on the docket of said Court, and which said Special Master's sale was confirmed by said United States District Court for the District of New Mexico, on the 8th day of October, 1925.

"In Witness Whereof, The said parties of the first part have hereunto set their hands and seals the day and year first above written.

"Ursula Looney Hamblin     (SEAL)
"Frank L. Hamblin          (SEAL)
"John Looney               (SEAL)"

On January 20, 1927, the following instrument was filed with the Clerk of Rio Arriba County. The same was prepared in the State of Texas without the knowledge or consent of the plaintiffs.

"State of New Mexico ⎫ ss.
County of Rio Arriba ⎭

"Whereas on the 9th day of February, 1926, Ursula Looney Hamblin, joined by her husband Frank L. Hamblin, and John Looney entered into a certain agreement between Edward Sargent and his wife of Rio Arriba County, New Mexico, wherein it was provided that in consideration of $10.00 paid to the said Edward Sargent that the said Edward Sargent obligated and bound himself to re-convey to the said Ursula Looney Hamblin and her husband Frank L. Hamblin, and John Looney the following described real estate situated in Rio Arriba County, New Mexico, to-wit:
(Herein description)

"That the consideration for the foregoing agreement and contract for the re-conveyance of the above described real estate was not in fact the $10.00 that is expressed in said agreement and contract but said consideration for said agreement and contract is as follows:

"That on or about the 9th day of February, 1926 the said Ursula Looney Hamblin applied to the said Edward Sargent for a loan for $30,805.50 and the said Edward Sargent agreed to make said loan and did make said loan to the said Ursula Looney Hamblin on or about said date and in consideration that she, the said Ursula Looney Hamblin, joined by her husband Frank L. Hamblin and John Looney would execute and deliver to the said Edward Sargent a deed of conveyance to all of the above described real estate. That thereafter or about the 16th day of February, 1926 in obedience to said agreement the said Ursula Looney Hamblin and husband Frank L. Hamb-

lin and John Looney, executed and delivered a deed of conveyance to all of the above described real estate with the expressed agreement and understanding verbally made between said parties that said deed of conveyance was made and delivered as aforesaid merely as security for said loan of $30,805.50.

"That the said Ursula Hamblin is the owner in fee simple of all the above described real estate subject only to the lien of the said Edward Sargent to secure the payment of the said sum of $30,805.50 with interest there on from the 9th day of February 1926 at the rate of 10% per annum, That while said deed on its face appears to be an absolute deed to the fee simple title of all the above described real estate, as a matter of fact said deed is only a mortgage to.secure the payment of said sum of money.

"Witness my hand this 30th day of December, A.D. 1926.

"Signed   Ursula Looney Hamblin"

On July 16, 1951, two months and eight days after the complaint had been filed, and twenty-five years, five months and seven days after the issuance of the warranty deed by the defendants, the following instrument was filed with the Clerk of Rio Arriba County, without the knowledge or consent of the plaintiffs:

"Ursula Looney Hamblin and Frank L. Hamblin, her husband, mortgagors under that certain mortgage dated February 9, 1926 to Edward Sargent, which said mortgage, though in form a deed of conveyance, was given to secure a certain indebtedness, as more particularly set forth in Defendants' Amended Answer in a certain suit presently pending in the District Court of the First Judicial District in and for Rio Arriba County, New Mexico, entitled 'Edward Sargent and Estelle B. Sargent, plaintiffs, vs. Ursula Looney Hamblin and Frank L. Hamblin, her husband, Defendants,' and being Cause Number 5486 on the Civil Docket of said Court, which said indebtedness was secured by the following described land in Rio Arriba County, New Mexico, to-wit:
(Herein description)
do hereby admit that the aforesaid indebtedness secured by the aforesaid realty remains unpaid and consent that the mortgage lien of the said Edward Sargent upon said realty be and remain in full force and effect.

"Ursula  Looney  Hamblin
Ursula  Looney  Hamblin
"Frank  L.  Hamblin
Frank  L.  Hamblin        "

While there are many assignments of error, we believe there is but one question

for determination by this court, and that is whether the agreement of sale together with the warranty deed, constitute a mortgage or an absolute sale with an option of repurchase.

■ One test which may be applied in determining the nature of the transaction is whether there exists mutuality and reciprocity of rights between the parties. In other words, it may be helpful to determine whether the grantee has the right to compel the grantor to pay the consideration named in the agreement for reconveyance. If he can compel such payment the transaction is generally regarded as a mortgage, while if he cannot compel such payment the transaction is generally regarded a conditional sale. 36 Am.Jur., Mortgages, § 167, page 773; 37 Am.Jur. § 1182, page 426; 41 C.J., Mortgages, § 87, page 325; 59 C.J.S., Mortgages, § 27. The testimony given by plaintiff indicates that he never made a loan and never intended the transaction to be a loan. The purchase price was paid for the lands and the defendants under the agreement had an option to repurchase same within a definite time, which option they did not exercise. There was no debt remaining which could have been enforced by plaintiffs nor was the obligation on the part of the defendants, insofar as repurchase is concerned, one which could have been enforced by the plaintiffs. The obligation under the option was unilateral enforceable only by defendants.

■ The intention of the parties at the time an agreement is consummated to execute a deed determines whether title to the property is to be irrevocably transferred or the conveyance, though absolute in form, is to be merely as security for the payment of a debt or the performance of an obligation. In order for the defendant to have a deed, which is an absolute conveyance, as shown upon its face, declared a mortgage, it is incumbent upon such defendant to prove by clear and convincing evidence that the instrument was simply security and not an absolute deed. Parks v. Mulledy, 49 Idaho 546, 290 P. 205, 79 A. L.R. 937 and annotation therein; Harmon v. Grants Pass Banking & Trust Co., 60 Or. 69, 118 P. 188; 41 C.J. § 96, page 331, 59 C.J.S., Mortgages, § 36.

The undisputed evidence shows the execution and delivery, by defendants, of an absolute warranty deed, in the usual form, to plaintiffs, dated February 9, 1926, and a written agreement of sale dated February 6, 1926, executed by the plaintiff Edward Sargent, and defendant Ursula Looney Hamblin, whereby the defendant agrees to sell and convey to plaintiffs the premises described in said deed, upon the payment of $30,805.50, but, in case defendants exercise their option to repurchase, said property shall be deeded back to them. That the purchase price was fully paid by the plaintiffs as per agreement.

The deed being absolute in form, the burden was upon defendants to show that it was a mortgage, the law presuming that an instrument is what it appears on its face to be, an absolute conveyance, and, in the absence of fraud or imposition, the proof to overcome this presumption and establish its character as a mortgage must be clear, unequivocal and convincing. Pomeroy's Jurisprudence, Vol. 4, § 1196, page 586; 59 C.J.S., Mortgages, § 48(a–b) pp. 82, 83; Brandt v. Manson, Mo.App., 207 S.W.2d 846; Parks v. Mulledy, supra; Gish v. Terrell, 266 Ky. 424, 427, 99 S.W.2d 168. There is no contention in the record that the plaintiffs perpetrated a fraud upon the defendants by which they were induced to execute to them the deed in question. After a very careful reading of the testimony and an examination of the exhibits, we conclude that the defendants have not shown by clear, unequivocal and convincing evidence that the deed was intended to be or is, a mortgage.

The subsequent conduct of the parties is often persuasive of what they intended to accomplish by the transaction. Among the circumstances held to be evidence that they intended to convey the title instead of a mortgage are the following: That the grantor relinquished possession; that he allowed a long period of time to elapse without asserting a claim to the land or exercising any act of ownership over it; that he paid no taxes or incumbrances; that grantee took possession and exercised dominion over the land as owner; that he paid taxes; that he put valuable improvements on the land; that he contracted to sell and convey the land as owner. Hesser v. Brown, 40 Wash. 688, 82 P. 934; Rich v. Doane, 35 Vt. 125; Becker v. Howard, 75 Wis. 415, 44 N.W. 755; Hart v. Randolph, 142 Ill. 521, 32 N.E. 517; Gray v. Hayhurst, 157 Ill.App. 488; Fridley v. Somerville, 60 W.Va. 272, 54 S.E. 502; Way v. Mayhugh, 57 W.Va. 175, 50 S.E. 724; La Cotts v. La Cotts, 109 Ark. 325, 159 S.W. 1111; Bradford v. Heesell, 150 Iowa 732, 130 N.W. 908.

In the instant case the defendants relinquished possession; they allowed more than twenty-five years to elapse without asserting any claim to the land or exercise any act of ownership over it; they paid no taxes since 1926; the plaintiffs took immediate possession and exercised dominion over the land as owners; they paid the taxes on the land for over twenty-five years; they put valuable improvements thereon; and they have contracted to sell and convey the land as owners.

With the above well established rules of law in mind, and after a careful review of the testimony presented by the record, we conclude that the verdict of the jury and the finding of the court that the transaction entered into by the parties con-

stituted an absolute sale and not a mortgage are sustained by the evidence. The oral testimony, when taken in connection with the written instruments, renders it reasonably certain that it was the intention of the parties that the warranty deed should be absolute in fact, as well as in form.

Finding no reversible error the judgment is affirmed, and

It is so ordered.

McGHEE, C O M P T O N and SEYMOUR, JJ., concur.

SADLER, C. J., absent from state and not participating.