529 P.2d 1220

**Adelicio MOYA and Marino Moya,
Plaintiffs-Appellants,**

v.

**CHILILI COOPERATIVE ASSOCIATION,
INC., et al., Defendants-Appellees.**

No. 9716.

Supreme Court of New Mexico.

Dec. 20, 1974.

Charles T. DuMars, L. Michael Messina, Albuquerque, for Adelicio Moya.

Federico Ballejos, Albuquerque, for Marino Moya.

Cotter, Atkinson, Campbell, Kelsey & Hanna, Richard C. Minzner, Albuquerque, for defendants-appellees.

## OPINION

OMAN, Justice.

The plaintiff, Adelicio Moya, claiming to represent a class of persons similarly situated, brought suit against defendants seeking, among other things, injunctive relief, dissolution of the defendant Association, the appointment of a receiver to administer the assets of the Association, and a determination of the heirs of the Chilili Land Grant. Adelicio's brother, Marino Moya, was permitted to intervene on behalf of another class.

The parties proceeded to trial upon the issues presented in one of the causes of action asserted by Adelicio in his complaint. The issues were resolved against plaintiffs, and judgment was entered in favor of defendants. Plaintiffs appealed. We affirm.

The subject of this cause is the Chilili Land Grant, which came into existence on March 29, 1841, when the then Governor of the Mexican Province of New Mexico granted to 20 families a certain tract of land, including the lands upon which the then Town of Chilili was situate. These families were given possession of the tract and apparently continued in possession for many years.

In 1876, the Territorial Legislature of New Mexico enacted ch. 51 [1876] Laws of N.M. 135, which, as amended, is codified as §§ 8–4–1 to 8–4–3, N.M.S.A.1953 (Repl.Vol. 2, pt. 2, 1974). By this 1876 legislative enactment, apportionments of the lands to the bona fide residents thereon were confirmed, provision was made for the issuance of deeds to the bona fide possessors of the lands apportioned to them, and authority was granted to elected trustees "* * * to pass such ordinance as they may deem necessary for the protection of the common property of the grant, subject to the approval of a majority of the bona fide residents of said grant."

A 1943 amendment, ch. 47 [1943] Laws of N.M. 67, insofar as here pertinent, deleted the just-quoted language, and provided:

"The board of trustees shall have authority to pass such ordinances as it deems necessary for the administration and protection of the common property of the Grant, and to sell and convey such real and personal property upon such terms and conditions and for such consideration as it deems advisable and for the best interests of the residents of the Grant. * * *"

The Grant was confirmed by the United States Congress in 1858, Act of Dec. 22 1858, ch. 5, 11 Stat. 374, and was finally patented by the United States to the "Town of Chilili" in 1909.

In 1942, the defendant Association was incorporated for the purpose, among others, of obtaining a loan from the Farmers Home Loan Administration of the United States Department of Agriculture with which to redeem from the State all grant lands. These lands had been deeded to the State to satisfy delinquent taxes levied thereon.

In 1943, quitclaim deeds were executed by which all grant lands were purportedly conveyed to the Association. One of these deeds, dated September 15, 1943, was executed by the Town of Chilili as grantor, acting through its Board of Trustees. This deed was executed after the effective date of the above quoted 1943 amendment to § 8–4–3, supra. The other deed was executed by a large number of purported residents of the Town of Chilili.

The loan by the Farmers Home Loan Administration to the Association was consummated. The delinquent taxes were paid and the lands redeemed by the Association.

The foregoing recited events were either stipulated to or are found in the unchallenged findings made by the trial court.

Plaintiffs first contend the individual, bona fide residents of the Grant were vested with property and participatory rights in the common lands of the Grant by the 1909 patent. This contention is refuted by our decision in Merrifield v. Buckner, 41 N.M. 442, 445–446, 70 P.2d 896, 898 (1937), which involved the Chilili Land Grant and wherein we stated:

"There is nothing in evidence to indicate the nature of the original Mexican title papers [creating the Chilili Land Grant], but it may be taken as a fact that the title is identical with that of the Town of Tome Grant, confirmed by the same act of the Congress (December 22, 1858), in regard to which the Territorial Supreme Court, in Bond et al. v. Unknown Heirs of Juan Barela, 16 N.M.

660, 120 P. 707, 715, stated: 'In other words, the only title which passed from the crown was to the allotments, and these to each of the allottees respectively, and not to the community to be held in common as the property of all. The outlying land remained in the crown subject, however, to use for pasturage and other purposes by the members of the community. That this last, however, constituted a title in no sense, but simply a permissive use at the pleasure of the crown, is pointed out in the Sandoval Rio Arriba Company and Pena Cases above referred to. The similarity between the present title papers and those in the Pena Case impresses us as particularly noticeable. This being the nature of the Tome title papers, we hold, with the contention of the appellees, that, when Congress came to act upon this claim in 1858, it passed as the property of the United States to the town of Tome all of the land not previously allotted to settlers. This thus partook of the nature of an original grant to that town and to its successors the present defendant corporation. The grant was burdened with no trust in favor of plaintiffs as the successors in title to certain of the original allottees, and the court below was therefore right in declining to impress upon the confirmation any such declaration of a trust.'

"Upon appeal to the Supreme Court of the United States the Tome Case was affirmed (229 U.S. 488, 33 S.Ct. 809, 811, 57 L.Ed. 1292). The Supreme Court closed its opinion as follows: '* * * no title to any of the land, passed to any of the petitioners save those to whom allotments were made, and only to the allotted tracts, no further discussion is necessary. When patent to the entire grant issued to the town of Tome, title to all the unallotted land passed from the United States to the town, unburdened with any trust for heirs or grantees of persons named in the original petition and decree.' "

It is true that in Kavanaugh et al. v. Delgado et al., 35 N.M. 141, 147, 290 P. 798, 801 (1930), which preceded our opinion in Merrifield v. Buckner, supra, we stated with reference to another land grant that:

"[W]e cannot but entertain the view that the owners of allotted lands within the grant [Tecolote] have such an interest in the common lands that it would be a backward step if equity should deny them the rights of suitors in cases in which taxpayers in municipalities enjoy those rights."

However, the rights of suitors recognized in the Kavanaugh case in no way conflict with or detract from our holding in the Merrifield case that absolutely no property interests in the common lands were conveyed to the individual residents of the Grant by the 1909 patent from the United States.

▮ Plaintiffs next urge that several "authorizations and requests," purportedly signed by a number of residents of the Town of Chilili during January 1943, authorizing the Board of Trustees to convey all Grant lands to the defendant Association, are fraudulent and granted no authority to the Board of Trustees to convey these lands.

However, this claim is of no significance, since the 1943 amendment to § 8–4–3, supra, empowered the Board of Trustees to sell and convey common lands of the Grant without the approval of the residents of the Town of Chilili. The deed from the Board conveying the Grant lands to the Association was dated September 15, 1943, which was subsequent to the effective date of the 1943 amendment.

▮ The next attack is made upon the authenticity and validity of the quitclaim deed from the Board to the defendant Association and the resolution of the Board authorizing the execution of the deed. The first argument is that the district court's finding of fact as to the authenticity of the deed is not supported by substan-

tial evidence. We have searched the record and are convinced that there is substantial evidence to support this finding.

The next argument is that, even if the deed executed by the Board was authentic and operated as a valid instrument of conveyance, the property interest conveyed thereby is subject to the condition that all "heirs" of the Grant are entitled to participate in decisions regarding the disposition of the Grant or common lands. However, the language of the deed suggests no such condition. It simply states that all the land and water rights of the Chilili Grant, with certain exceptions, are granted, bargained, sold, remised, conveyed, released and quitclaimed to the Association for a consideration of $1.00.

Clearly, the evidence supports the finding of the trial court that no such condition was intended. In Sharpe v. Smith, 68 N.M. 253, 257, 360 P.2d 917, 920 (1961), we had the following to say concerning the construction of a deed:

"In construing a deed, as in the case of a will, it is not what the parties may have intended by the language used but the nature and quantity of the interest conveyed must be determined by the meaning of the words used in the instrument itself and cannot be orally shown. [citations omitted]"

The next argument is that the sale of all the Grant lands, with the exception of certain described parcels, for a recited total consideration of $1.00, was either in violation of the authority vested in the Board by § 8-4-3, supra, or amounted to constructive fraud. Plaintiffs contend that the authority vested in the Board by § 8-4-3, supra, to sell and convey the real property of the Grant, upon such terms and conditions and for such consideration as it deems advisable and for the best interests of the residents of the Grant, could not possibly contemplate a sale of the Grant lands for only $1.00.

However, the trial court made findings, which are not here attacked, that at some time prior to the conveyance the whole of the Grant lands had been deeded to the State for delinquent taxes; the Board had tried to secure a loan from the Farmers Home Loan Administration with which to pay the delinquent taxes and thus redeem the lands; and the Farmers Home Loan Administration, as a condition precedent to making such a loan, required the formation of the Association and the conveyance to it of the Grant lands. In fact, the attorneys of the Farmers Home Loan Administration prepared all the documents and performed all legal services necessary for the creation of the Association. As above stated, the lands were deeded to the Association, the loan was obtained by the Association, and the delinquent taxes were paid and the lands redeemed by the Association.

Under these circumstances, there obviously was no failure or inadequacy of consideration, and there was no constructive fraud. The purpose for the formation of the Association and the conveyance of Grant lands to it was to preserve some use of the lands for the residents. The lands and their use had already been lost for nonpayment of taxes, subject only to the statutory right of redemption.

The next contention is that the transfer of the Grant lands to the Association defeated certain voting rights of the "heirs" of the Grant as provided in § 8-4-3, supra. These rights were those of electing a Board of Trustees, which it is contended was the "governing elected body of the heirs of the Grant." On several occasions, we have considered the nature of the governing authority of boards of trustees of land grants. We have concluded that this governing authority is in the nature of that exercised by "quasi-municipal corporations" whose "* * * principal, if not * * * only, function is to hold title to and manage common lands." Kavanaugh et al. v. Delgado et al, supra, 35 N.M. at 145, 290 P. at 800. See also Bibo v. Town of Cubero Land Grant, 65 N.M. 103, 332 P.2d 1020 (1958); State v. Bd. of Trustees

of Town of Las Vegas, 28 N.M. 237, 210 P. 101 (1922).

We agree that the Board had authority to govern or deal with the common property to the extent provided in § 8–4–3, supra. This authority included the power to sell and convey any or all of the Grant's common lands. These lands were conveyed to the Association. Thus, although the right to elect a Board of Trustees was not directly destroyed, there was no reason for the continued existence of the Board. The loss of the reason for the existence of the Board resulted from the exercise by the Board of its legitimate authority and power, as found by the district court.

■ Plaintiffs next argue that the conveyance of the common lands to the Association in some way constituted an unconstitutional delegation of governmental powers. The district court found:

"The Town of Chilili Board of Trustees neither assigned nor attempted to assign by any formal action any governmental powers to the Chilili Cooperative Association."

This finding is consistent with the record before us and the district court's conclusion that "The Town of Chilili assigned no governmental powers to the Chilili Cooperative."

■ The only remaining point relied upon for reversal, which need be considered, is the claim that the membership of the Association is illegally constituted by reason of a failure to comply with the by-laws of the Association.

The district court made the following findings and conclusions which are relevant to and dispositive of this claim:

"Findings of Fact

"5. This action is being prosecuted by Plaintiffs Adelicio Moya and Marino Moya as a class action pursuant to Rule 23 of the Rules of Civil Procedure of the District Court of the State of New Mexico, and is brought on behalf of Plaintiffs and all similarly situated persons."

"6. Plaintiff Adelicio Moya's class consists of all heirs of the Town of Chilili Land Grant who are residents of New Mexico and who are members of the Chilili Cooperative Association."

"7. Plaintiff Marino Moya's class consists of all heirs of the Town of Chilili Land Grant who are residents of New Mexico and who are not members of the Chilili Cooperative Association."

"9. An heir of the Town of Chilili Land Grant as commonly understood by the parties and by residents of Chilili is a person who is in the direct line of descent of an individual or family that was an original grantee of the Town of Chilili Land Grant."

None of these findings has been attacked. Thus, they are facts which we must accept as true on this appeal. State ex rel. State Highway Commission v. Sherman, 82 N.M. 316, 481 P.2d 104 (1971).

Adelicio Moya became a member of the Association upon its formation and is still a member. Marino Moya testified he last applied for membership in the Association in 1954 or 1955 and acquired property within the Grant during 1956.

"Conclusions of Law

"5. Since the inception of the Cooperative the Directors of the Cooperative have been under a duty to the Cooperative to admit members only in accordance with its Articles and By-Laws."

"8. No 'heirs,' residents, or other participants in the Town of Chilili because of that status, nor the Town itself, have any interest in any property formerly of the Town once it has been conveyed by the Board of Trustees under § 8–4–3, N. M.S.A.1953."

"22. No particular heritage or ancestry entitles one to membership in the Chilili Cooperative Association."

"12. Any person asserting a right to membership in a membership corporation must bring suit to compel admission

within four years of the accrual of that right under § 23-1-4, N.M.S.A., (1953 Comp.), or be barred by the Statute of Limitations."

"14. Marino Moya is barred by the Statute of Limitations from maintaining an action to compel his admission to membership in the Chilili Cooperative Association."

"16. Plaintiff Adelicio Moya is estopped by his membership in the Chilili Cooperative from maintaining this action."

The pertinent language of the Association's by-laws reads:

"Any natural person claiming to be the owner of agricultural lands within the Town of Chilili Grant at the date of incorporation of this Association, or who thereafter becomes the owner of such lands and who is acceptable to the Board of Directors shall be entitled to become a member of this Association. * * *"

Obviously, from what has been said above, and as concluded by the trial court, heirship does not entitle one to membership in the Association. Since the classes represented by plaintiffs are heirs of the Town of Chilili, as that term is commonly understood, who are also residents of New Mexico, it clearly follows that the class action must fail insofar as it is attempting to compel admission of the class members to the Association. No right to membership exists in favor of these classes.

Additionally, the representative plaintiffs are also not entitled to force the Association to admit members. Adelicio Moya is in no position to complain, because he is a member of the Association and has been so since its incorporation. Marino Moya, if he ever became entitled to membership in the Association, acquired this right no later than 1956 by his own testimony. He has made no application for membership since then. Upon being rejected at that time, if this was in fact the case as he claims, the four year limitation period provided in § 23-1-4, N.M.S.

A.1953, supra, for the bringing of his suit to compel his acceptance to membership had expired long before the filing of his complaint in intervention on June 6, 1972.

Adelicio Moya also claims that the trial court's finding, that some members of the Association "do not own land within the boundaries of the * * * Grant, and * * * have never owned land within such boundaries, and * * * do not meet the requirements for membership of the * * * Association's own By-laws", makes it reversible error for the court to deny plaintiff's requested conclusion that the Association contains members not entitled to belong. However, this suit was not tried on the issue of whether persons who should not be members of the Association should be expelled. Plaintiff's complaint alleges that the Association has admitted persons who are not *heirs* in contravention of the laws and constitutions of the United States and New Mexico. Violation of the by-laws was not alleged. We have held above that heirship is not related to membership in the Association, and it is clear from the record that the question in this case was whether non-heirs should be expelled. It is, of course, not error for the court to refuse to make conclusions of law on issues not present in the case, even if the facts presented make out a case of illegality. Cf. L. & B. Equipment Company v. McDonald, 58 N.M. 709, 275 P.2d 639 (1954). If the issue had been tried by consent of the parties, the trial court would be compelled to consider the complaint as amended to include this claim. Wynne v. Pino, 78 N.M. 520, 433 P.2d 499 (1967). However, the record clearly indicates that the defendants did not consent, either expressly or impliedly, to trial of this issue. Plaintiffs did not even attempt to show the court which members of the Association should be expelled, and thus failed to provide the court with the facts necessary for it to grant relief. In addition, since the complaining class is made up of New Mexico residents and heirs of the Grant, persons not necessarily entitled

to membership in the Association, the granting of the relief sought might have forced the court to expel some of the plaintiffs. Under the circumstances, it appears unlikely that the defendants could even have surmised the issue was being tried, so their consent to its inclusion in the case cannot be implied. Nor was it ever expressly given. The trial court did not err in refusing plaintiffs' requested conclusion.

The judgment of the district court should be affirmed.

It is so ordered.

STEPHENSON and MARTINEZ, JJ., concur.