770 P.2d 542

**James R. TOULOUSE, a married man, and Mary C. Walters, a widow, Plaintiffs–Appellees,**

v.

**The CHILILI COOPERATIVE ASSOCIATION, a New Mexico Corporation, Defendant–Appellant.**

**No. 10116.**

Court of Appeals of New Mexico.

Feb. 21, 1989.

Marcia Milner, Albuquerque, for defendant-appellant.

James C. Hall, Albuquerque, for plaintiffs-appellees.

OPINION

HARTZ, Judge.

Plaintiffs filed suit in Bernalillo County District Court to quiet title to land in which they claim ownership within the exterior boundaries of the tract originally conveyed to the town of Chilili by patent from the United States of America. After a nonjury trial the district court ruled in favor of plaintiffs on two independently sufficient grounds: (1) plaintiffs had proven their claim of ownership by valid deeds of conveyance from their predecessors in title, and (2) they had acquired title through adverse possession. Defendant Chilili Cooperative Association (Association) appeals

from that ruling. We affirm on the ground that plaintiffs acquired good title from their predecessors in interest; we therefore do not need to address the issue of adverse possession.

The historical background of the Chilili Land Grant appears in decisions of the New Mexico Supreme Court, *Moya v. Chilili Cooperative Association*, 87 N.M. 99, 529 P.2d 1220 (1974), *cert. denied*, 421 U.S. 965, 95 S.Ct. 1954, 44 L.Ed.2d 452 (1975) and *Merrifield v. Buckner*, 41 N.M. 442, 70 P.2d 896 (1937). Portions of the grant were deeded to specific individuals to hold in fee simple. The remainder of the grant was common land governed by a board of trustees.

Uncontested findings by the district court proceed with the history as follows:

7. In 1943, [New Mexico's] laws were amended to allow the trustees to sell the common lands for the best interests of the residents of the Grant.

8. Under such authority, the Board of Trustees of the Town of Chilili Grant sold the common lands to the Chilili Cooperative Association.

9. The Association was incorporated in 1942 for the purpose of obtaining a loan from the Farmer's [sic] Home Administration of the United States Department of Agriculture so that the common lands which had been sold to the State of New Mexico for delinquent taxes could be redeemed.

10. On or about the same time that the Trustees had conveyed the common lands of the Grant to the Cooperative Association, the owners of individual tracts conveyed their lands to the Association by quitclaim deed.

\* \* \* \* \* \*

12. The loan by the Farmers Home Administration to the Association was consummated and the delinquent taxes were paid and the lands redeemed by the Association.

13. [A] quiet title suit [brought in the name of the Association] resulted in a Decree quieting title in the name of the Association \* \* \*.

14. The owners of individual tracts were given ten years to pay the assessment levied against their lands by the Association and, upon payment, were to receive a quitclaim deed from the Association containing the new description of their original property taken from the survey.

The critical finding by the district court, which is disputed by the Association, is the following:

11. The conveyance by individual property owners within the exterior boundaries of the Town of Chilili Grant to the Association was in the nature of a mortgage of said tracts to secure prorata payment of the costs of redeeming the lands and for a suit to quiet title brought in the name of the Association.

The Association contends the conveyances by individual property owners to the Association converted their land into common land of the Association. In its view the right of each owner to receive a quitclaim deed back from the Association in return for payment of his assessment did not provide the owner with any title to the property. This contention is critical to the Association's claim, because it does not challenge any link in plaintiffs' chain of title except the deeds to the Association by plaintiffs' predecessors in interest. In other words, the Association does not dispute that if the deeds by plaintiffs' predecessors to the Association are mortgages, the chain of title from the United States patent to plaintiffs is proper and complete.

The Association contends the deeds to the Association cannot be mortgages, relying on the following statement in *Sharpe v. Smith*, 68 N.M. 253, 257, 360 P.2d 917, 920 (1961):

> In construing a deed, as in the case of a will, it is not what the parties may have intended by the language used but the nature and quantity of the interest conveyed must be determined by the meaning of the words used in the instrument itself and cannot be orally shown.

*Accord Moya v. Chilili Coop. Ass'n.*

Nevertheless, as between the grantor and the grantee, "[i]t has long been settled

in New Mexico that a deed absolute in form may be shown by parol testimony to have been given as a mortgage." *Boardman v. Kendrick*, 59 N.M. 167, 173, 280 P.2d 1053, 1057 (1955). *See* 3 R. Powell, *Law of Real Property* ¶ 447 (1986); Annot., *Deed Absolute on its Face, With Contemporaneous Agreement or Option for Repurchase by Grantor, as Mortgage Vel Non*, 155 A.L.R. 1104 (1945).

■ Proving a mortgage in such circumstances is not easy. "A deed, absolute in form, is presumed in law to be an absolute conveyance, and, in the absence of a showing of fraud, mistake, ignorance, or undue influence, the burden is on one seeking to establish it as a mortgage to overcome this presumption by clear, unequivocal, and convincing evidence." *Bell v. Ware*, 69 N.M. 308, 310, 366 P.2d 706, 707 (1961). The district court, however, found that the conveyances were mortgages. Even if the evidence before the district court may have supported a finding that the transactions at issue were conditional sales rather than mortgages, we cannot reverse the district court on that basis. We must affirm if, when the evidence is viewed in a light most favorable to the finding, the finding can be sustained by the evidence and permissible inferences therefrom. *Garcia v. Marquez*, 101 N.M. 427, 428–429, 684 P.2d 513, 514–515 (1984).

The following pronouncements of our supreme court guide us in determining whether the evidence suffices to support the existence of a mortgage:

> The intention of the parties at the time an agreement is consummated to execute a deed determines whether title to the property is to be irrevocably transferred or the conveyance, though absolute in form, is to be merely as security for the payment of a debt or the performance of an obligation.

*Sargent v. Hamblin*, 57 N.M. 559, 570, 260 P.2d 919, 926 (1953).

> The subsequent conduct of the parties is often persuasive of what they intended to accomplish by the transaction. Among the circumstances held to be evidence that they intended to convey the

title instead of a mortgage are the following: That the grantor relinquished possession; that he allowed a long period of time to elapse without asserting a claim to the land or exercising any act of ownership over it; that he paid no taxes or incumbrances; that grantee took possession and exercised dominion over the land as owner; that he paid taxes; that he put valuable improvements on the land; that he contracted to sell and convey the land as owner.

*Id.* at 571, 260 P.2d at 927.

> One test which may be applied in determining the nature of the transaction is whether there exists mutuality and reciprocity of rights between the parties. In other words, it may be helpful to determine whether the grantee has the right to compel the grantor to pay the consideration named in the agreement for reconveyance. If he can compel such payment the transaction is generally regarded as a mortgage, while if he cannot compel such payment the transaction is generally regarded a conditional sale.

*Id.* at 570, 260 P.2d at 926. Although *Sargent* states that the reciprocity of rights between the parties is just "one test," *Bell* elevated the importance of that consideration when it stated:

> The great weight of authority supports the position that the existence of an indebtedness running from the grantor to the grantee is essential to a conclusion that a deed be construed as a mortgage. Not only must there be the indebtedness, but the rights and remedies of the parties must be mutual, that is, there must be the right of the grantee to demand and enforce his debt and the obligation of the grantor to pay.

69 N.M. at 312, 366 P.2d at 708.

■ The circumstances surrounding the conveyance of the quitclaim deeds from the individual property owners to the Association suggest an intent to convey mortgages rather than full title. The principal purpose of the conveyances was to enable the Association to provide additional collateral to the Farmers Home Administration for the loan it was granting to the Association

to redeem land sold to the state for delinquent taxes. The payment required from the individual owner to obtain a quitclaim deed from the Association was calculated not by the value of his property but by his share of the costs of redeeming the lands and of the Association's quiet title suit. Although a deed absolute in form may have been necessary to protect the interests of the Farmers Home Administration, the conveyances look much more like mortgages securing expenditures to protect or increase the value of the grantors' own allotments than like transfers of title in return for the market value of the allotments.

Also, the subsequent actions of those interested in the property at issue in this case suggest that they considered the quitclaims to the Association to be in the nature of mortgages. Plaintiffs and their predecessors acted as if they owned the land. In unchallenged findings the district court stated that during the period from 1952 to the present, plaintiffs and their predecessors in title had caused two surveys to be made of the land; grazed cattle on the land; caused fences to be built, repaired, and maintained; built bridges and installed culverts; caused the well on the land to be cleaned and repaired; posted the land against trespassers; and installed and locked gates. The district court also found that beginning at least since 1967 plaintiffs had gathered firewood from the land, leased the land for pasturage, and paid property taxes; and plaintiffs' predecessors had conveyed various portions of the land to others, with the knowledge of officers of the Association.

With respect to the critical issue of whether the owner of an individual tract had a reciprocal obligation to the Association, witnesses at trial testified that for many years the Association maintained ledgers reciting the assessments due from individuals.

Finally, we find one exhibit is in itself sufficient evidence to support the district court's finding of a mortgage. Plaintiff's Exhibit 15 is a document purporting to be an agreement of April 27, 1955, between the Association and one of plaintiffs' predecessors in title. The exhibit was admitted into evidence as an example of the type of agreement entered into between the Association and landowners, not as proof of a specific agreement between the Association and plaintiffs' predecessor. (Indeed, there was no evidence that any of plaintiffs' predecessors in interest entered into such an agreement.) The document, which reflects how the Association viewed the earlier conveyances, states that the quitclaim deeds had been intended to secure obligations from the individual landholders to the Association, obligations that the Association could enforce through legal action. We quote at length from the document:

WHEREAS, the Association during the years 1943 and 1944 made assessments upon land heretofore owned and held by Assessee for the purpose of making certain improvements upon all area formerly known as the Chilili Land Grant and Assessee's land,

WHEREAS, Assessee, in consideration for said promise of improvements, accepted said assessment, and *as security for the payment of said assessment conveyed all of his title, right and interest in and to said land to said Association,*

WHEREAS, said assessments were to be paid within a period of ten (10) years expiring on 1 January, 1953,

WHEREAS, the Board of Directors of said Association extended the time of payment to Assessee of said assessment to 1 January 1954,

WHEREAS, said Assessee has failed to pay said assessment to Association,

WHEREAS, said Association in January meeting held at Chilili, New Mexico on 16 January 1955 resolved that no further extension of time would be granted to Assessee unless he signed agreement with said Association to make payment by 1 January, 1956,

NOW, THEREFORE, IN CONSIDERATION OF THE FOREGOING RECITALS, COVENANTS AND AGREEMENTS HEREINAFTER CONTAINED,

IT IS MUTUALLY AGREED BY AND BETWEEN THE PARTIES AS FOLLOWS:

1. In consideration for extension of time to be and hereby granted by the Association to Assessee for payment of assessment due, Assessee hereby agrees to make payment in full to Association on or before 1 January 1956 for assessment upon land heretofore held and owned by Assessee.

2. Association, in consideration of promise to pay assessment as above made by Assessee, agrees to extend and hereby extends time of payment for said assessment until 1 January 1956 and *further agrees to forestall any legal action necessary for the collection of said assessment* until said date.

3. *Assessee hereby agrees to waive all rights of redemption, if any, held by Assessee upon land involved herein,* and agrees that unless payment is made of his assessment by 1 January 1956 that said land heretofore assessed herein shall be the sole property of Association, without any right of statutory redemption or equity of redemption whatsoever on the part of Assessee thereto. .[Emphasis added.]

We do not read the Association's bylaws as necessarily inconsistent with the language of Exhibit 15 referring to the quitclaim deeds as security instruments.

Finally, the district court found that plaintiffs' predecessors were not delinquent in any respect with regard to assessments owed to the Association. That finding is supported by substantial evidence. Therefore, plaintiffs owe nothing on any mortgage.

For the foregoing reasons, we affirm the district court. Plaintiffs' request for attorney fees is denied.

IT IS SO ORDERED.

BIVINS, C.J., and ALARID, JJ., concur.