807 P.2d 215

**In the Matter of the ESTATE OF George W. McKIM, Deceased.**

**HOMES BY MARILYNN and Marilynn McKim, Petitioners–Appellees,**

v.

**Paul ROBINSON, Personal Representative, Respondent–Appellant.**

**No. 18411.**

Supreme Court of New Mexico.

Feb. 27, 1991.

Gallagher, Casados & Mann, J.E. Casados and Gail Stewart, Albuquerque, for respondent-appellant.

Moses, Dunn, Beckley, Espinosa & Tuthill, P.C., Leonard Espinosa and Mark A. Glenn, Albuquerque, for petitioners-appellees.

## OPINION

MONTGOMERY, Justice.

The trial court imposed a constructive trust on each of two properties held by the estate of George W. McKim. The beneficiary of the constructive trust is Homes by Marilynn, Inc. (Homes), a corporation wholly owned by Marilynn McKim, widow of the decedent. The estate appeals, contending that the trial court lacked sufficient evidence to impose the constructive trusts and that, in any event, a constructive trust is not an appropriate remedy under the circumstances of this case. We disagree and affirm the trial court's ruling.

### I.

George and Marilynn McKim were married on January 19, 1981. Under an antenuptial agreement, the McKims agreed that property owned before the marriage or subsequently acquired by one spouse would remain separate property. The two properties at issue in this appeal were owned by Mrs. McKim's business, Homes, at the time of the marriage. These properties are both in Albuquerque and consist of a vacant lot on Ridgecrest Avenue (the Ridgecrest property) and an office building on Yale Boulevard (the Yale property).

During the marriage, Homes and Mrs. McKim experienced financial difficulty. In 1982, Homes obtained a $15,000 bank loan using the Ridgecrest property as collateral. As Homes's financial situation worsened, Mr. McKim in March 1983 offered to pay the balance on the loan, then $8,000. Mrs. McKim in return agreed to convey the property to Mr. McKim, and Homes executed a warranty deed granting the property to Mr. Mckim as his separate property in April 1983. The parties disagree as to whether the deed was intended as a permanent transfer of title or merely as security for repayment to Mr. McKim of the $8,000 advanced to pay off the loan. By July 1983, Mr. McKim had paid the balance of the loan. The parties stipulated that the fair market value of the Ridgecrest property in July 1983 was $25,000. The property has since been sold and the parties agree that the Ridgecrest property now exists in the form of its proceeds, $25,000 in cash.

In September 1984, the holder of a first mortgage on the Yale property filed a foreclosure action, in which the holder of a second mortgage and the Internal Revenue Service joined to enforce their respective liens against the property. To save the property from foreclosure Mr. McKim took out loans of almost $430,000 in December

1984 to satisfy the claims of Mrs. McKim's creditors. The two lenders providing the loans required that Homes convey the Yale property to Mr. McKim and execute a separate property agreement designating the property as Mr. McKim's separate property.

In the spring of 1986, Mr. McKim was stricken with cancer. That summer the McKims moved to San Diego, California, hoping his health would improve. In the months preceding his death the following October, Mr. McKim took steps to transfer the properties to Mrs. McKim. He requested a warranty deed with the Yale property legal description from a title company. The deed was sent but never signed. In September he called an officer of another title company and requested a deed transferring the Ridgecrest property to Homes. It is not clear if this deed was ever sent. Mrs. McKim later delivered to the officer a blank deed containing Mr. McKim's signature but was told that a legal description could not be inserted on a deed which was already signed. A few weeks before his death, Mr. McKim called Mr. Robinson requesting blank deeds. Again, these were sent but never signed. At the time of his death in October 1986, Mr. McKim still held legal title to the Yale and Ridgecrest properties in his own name.

After Mr. McKim's death, Paul Robinson, who had been his attorney, was appointed personal representative of his estate and commenced its administration. Mrs. McKim and Homes filed claims against the estate seeking recovery of title to the properties. Robinson disallowed the claims and Homes then petitioned the district court for allowance of the claims under a theory of constructive trust. Following a bench trial, the court found that the McKims intended that Mr. McKim would hold title to the properties for the benefit of Homes and Mrs. McKim and imposed upon each property a constructive trust in favor of Homes. The court also required that Homes reimburse the estate for the amounts advanced by Mr. McKim to protect his wife's interests in the properties but not yet repaid to him or his estate. Robinson appeals, and we affirm.

## II.

It is generally held that a constructive trust must be proved by clear and convincing evidence. G.G. Bogert & G.T. Bogert, *The Law of Trusts and Trustees* § 472 (2d rev. ed.1978) [hereinafter Bogert]; 5 A. Scott & W. Fratcher, *The Law of Trusts* § 462.6 (4th ed.1989) [hereinafter Scott]. This Court has adopted the "clear and convincing" standard, *Garcia v. Marquez*, 101 N.M. 427, 429, 684 P.2d 513, 515 (1984), and both parties to this action acknowledge that Homes must have met this standard in order to prevail. We confess to some misgivings about the necessity for and appropriateness of this heightened standard of proof in cases such as this, where the basis for imposition of a constructive trust does not involve fraud, duress, undue influence, or other form of wrongful conduct, but solely the prevention of unjust enrichment. Where other restitutionary remedies are sought to prevent unjust enrichment under circumstances not involving fraud or other wrongful conduct, we only require proof under the "preponderance of the evidence" standard. *See* SCRA 1986, 13–304 (general rule in civil cases is to require proof by a preponderance). We can discern little justification for this discrepancy. *See* 5 Scott, *supra*, § 462.6 (criticizing requirement of clear and convincing evidence to prove entitlement to a constructive trust). However, since neither party questions the applicable standard of proof, we proceed with a review of the evidence in light of the heightened standard.

Appellant Robinson initially asserts that there is a lack of sufficient evidence by which the court could have found by clear and convincing proof that the McKims did not intend beneficial ownership to be transferred when the properties were deeded to Mr. McKim. In reviewing the court's finding, we reverse only if convinced that, viewing the evidence in the light most favorable to the prevailing party, the findings cannot be sustained by the evidence or permissible inferences there-

from. *Garcia*, 101 N.M. at 428, 684 P.2d at 514. This rule applies equally to cases where, as here, the findings must be supported by clear and convincing evidence. *Id.* at 428–29, 684 P.2d at 514–15.

In *Sargent v. Hamblin*, 57 N.M. 559, 570, 260 P.2d 919, 926 (1953), we noted that it is the intention of the parties at the time an agreement to execute a deed is consummated that determines whether beneficial title to the property was transferred. In this case, evidence of the parties' intentions at the time the transfers were made and of the circumstances surrounding the transactions supports the trial court's findings that the McKims did not intend that beneficial ownership of the properties change hands.

With respect to the Yale property, Mrs. McKim and a loan officer involved in the refinancing of that property testified to oral statements made by Mr. McKim that he was taking out the loans to save the property and its equity for his wife and that the McKims had an agreement to that effect. There was undisputed testimony that the deed to Mr. McKim and the separate property agreement were required by the lender and the title company to facilitate the refinancing; there was no evidence that it was Mr. McKim who insisted that title be transferred. It is undisputed that Mr. McKim was "always there and supportive" of his wife, and Robinson himself testified that Mr. McKim entered into the refinancing despite Robinson's urgings that the transaction was against Mr. McKim's interests. From this the trial court could properly conclude that Mr. McKim did not have his own benefit in mind when he took out the loans to pay off his wife's creditors.

As to the Ridgecrest property, Mrs. McKim testified that she agreed to deed the lot to Mr. McKim as security for repayment of the funds he advanced to pay off the loan on the property. Additionally, Mr. McKim only paid out a total of about $9,500 on the property, or 38% of the $25,-000 market value of the property at the time the deed was transferred.

Although the intention of the parties at the time of the transfer is of course the relevant inquiry, we recognized in *Sargent* that the parties' actions *following* the transfer are often revealing of their intent at the time of the transfer. In *Sargent* we outlined a number of factors regarding the parties' later actions which are useful in determining whether the parties intended, at the time of delivery of a deed absolute in form, that beneficial title be conveyed.[1] As we stated:

> The subsequent conduct of the parties is often persuasive of what they intended to accomplish by the transaction. Among the circumstances held to be evidence that they intended to convey title * * * are the following: That the grantor relinquished possession; that he allowed a long period of time to elapse without asserting a claim to the land or exercising any act of ownership over it; that he paid no taxes or incumbrances; that grantee took possession and exercised dominion over the land as owner; that he paid taxes; that he put valuable improvements on the land; that he contracted to sell and convey the land as owner.

*Sargent*, 57 N.M. at 571, 260 P.2d at 927. Likewise, and most relevant to our inquiry, the absence of these or similar factors would tend to show that the parties did *not* intend to convey beneficial title, but rather to pass conditional ownership or "dry" legal title, leaving beneficial ownership in hands of the grantor.

In the present case, the court made findings that Mrs. McKim continued to manage, maintain, and perform construction on the Yale property after the property was transferred to her husband and similarly that the McKims at all material times treated the Ridgecrest property as though it were owned by Homes. If sup-

---

1. Although *Sargent* involved the question whether a deed absolute in form was to be considered a mortgage, an issue not raised on this appeal (*see infra* note 5), we believe that the factors announced in that decision are useful in cases where intent to transfer beneficial ownership is in question.

ported by substantial evidence, these findings are highly relevant under *Sargent* as showing that the parties did not intend to transfer beneficial ownership of the properties.

Undisputed on this appeal is the court's finding that Homes made improvements to the Yale property even after it had been transferred to Mr. McKim. Although financed in part from one of his personal accounts, the construction was also paid for from two of Mrs. McKim's personal accounts and a joint account.

■ The court also found that, with Mr. McKim's knowledge and consent, Homes entered into a contract whereby Homes agreed to sell the Ridgecrest property to a third party along with a residence to be constructed on the property by Homes, despite the fact that Mr. McKim held title to the property at that time. Although Robinson challenges this finding, he provides no citations to evidence in the record which would either support or contradict it. This Court need not entertain a challenge to a trial court's finding of fact where the party challenging the finding fails to set out the substance of the evidence bearing upon the proposition, as our rules require. *Henderson v. Henderson*, 93 N.M. 405, 600 P.2d 1195 (1979); *see* SCRA 1986, 12–213(A)(3) (Cum.Supp.1990). We therefore deem conclusive the court's finding that, at a time when Mr. McKim held title to the Ridgecrest property, it was Homes who contracted as its owner to sell and convey it along with improvements to be constructed by Homes.

Additionally, the numerous attempts made by Mr. McKim to obtain deeds and transfer the properties to Mrs. McKim just prior to his death were evidence from which the court could have inferred he did not at the time of the transfers intend to receive the beneficial interest in the properties.

■ Robinson points to evidence which may contradict the court's findings and to countervailing considerations. He argues that Mrs. McKim's testimony is self-serving and contradicts her own prior statements and actions. Also, we are mindful

that courts typically view with suspicion claims to trusts based upon alleged oral agreements or understandings in cases where, as here, the grantee is deceased. *See* Bogert, *supra*, § 464 (repl. vol. 1991). However, it is for the trier of fact to determine the credibility of witnesses, reconcile inconsistent or contradictory statements, and decide where the truth lies. *Lewis v. Bloom*, 96 N.M. 63, 628 P.2d 308 (1981). Our task on appeal is to determine whether, viewing the evidence in the light most favorable to the prevailing party, the trial court's findings are supported by substantial evidence. Based upon the foregoing examination of the facts in the instant case, we find that there was substantial evidence from which the court could conclude that Mrs. McKim had met her burden of proving by clear and convincing evidence that the McKims intended that Mr. McKim would hold title to the properties for the benefit of Mrs. McKim.

### III.

Based upon its findings, the trial court determined that "[t]he intentions of the McKims with respect to the [properties] would be defeated and the Estate of George McKim would be unjustly enriched unless this Court exercise[d] its equitable powers to impose a constructive trust for the benefit of Homes" over each of the disputed properties. To insure that the estate would be reimbursed for amounts advanced by Mr. McKim to save the properties for Mrs. McKim, the court also impressed upon the Yale property an equitable lien in favor of the estate and required the $25,000 proceeds from the sale of the Ridgecrest property to be placed in an escrow account as additional security for the lien.

Robinson asserts that there are no facts justifying imposition of a constructive trust in this case. We disagree. He relies on our statement in *Garcia* that, apart from fraud, "[o]ther grounds commonly supporting the imposition of constructive trusts are abuse of a confidential relation and unjust enrichment." 101 N.M. at 428, 684

P.2d at 514. He argues that there was no finding of any abuse of a confidential relationship here and that the court's conclusion that the estate would be unjustly enriched if allowed to keep the properties lacks foundation.

■ It is true that there was no finding of an abuse of a confidential relationship in this case. However, the court did determine, in a finding undisputed on this appeal, that a fiduciary relationship existed between the McKims during their marriage. Both fiduciary and confidential relationships give rise to duties of trust and confidence and are therefore synonymous for the purpose of determining entitlement to a constructive trust. *See Garcia v. Presbyterian Hosp. Center*, 92 N.M. 652, 654, 593 P.2d 487, 489 (Ct.App.1979) (fiduciary and confidential relationships part of same concept). The existence of the fiduciary relationship was all that was necessary to establish constructive trusts over the properties held by Mr. McKim.

■ It is well established that a *breach* of a confidential relationship is not required to establish a constructive trust based on an oral agreement to hold a deed in trust; [2] the mere existence of a fiduciary or confidential relationship is sufficient in certain circumstances to justify imposition of a constructive trust.[3] *See Restatement (Second) of Trusts* § 44(1)(b) (1957); *Restatement of Restitution* § 182(b) (1936); 4 G. Palmer, *The Law of Restitution* § 19.3(c) (1978). This is significant in that it permits the imposition of a constructive trust against the estate of a grantee where, as in this case, the grantee dies before the trust is carried out and there is no indication that he intended to breach the confidential relationship by not performing the

trust. *See Henry v. Goodwin*, 266 Ark. 95, 583 S.W.2d 29 (1979); *Steinberger v. Steinberger*, 60 Cal.App.2d 116, 140 P.2d 31 (1943); *Silver v. Silver*, 421 Pa. 533, 219 A.2d 659 (1966). As stated in the *Restatement:*

If the transferee at the time of the transfer was in a confidential relation to the transferor, a constructive trust will be imposed even though the transferee was not guilty of an abuse of the confidential relation in retaining the land. Thus, if the transferee dies intestate without having repudiated his promise but intending always to perform it, his heir will be compelled to hold the property upon a constructive trust for the transferor. A court of equity will not permit the unjust enrichment of the heir.

*Restatement of Restitution* § 182 comment c; *see also Restatement (Second) of Trusts* § 44 comment c, illustration 3. This result has similarly been explained on the rationale that, because of the confidential relationship, the transferee holds title "subject to the equitable claim of the intended beneficiary, which could be enforced through the use of [a] constructive trust if [the] occasion arose for such relief, and the personal representative or other successor to the grantee [takes] subject to that equitable claim." G. Palmer, *supra,* § 19.3(c).

■ Here, the court determined that at the time the properties were transferred the McKims did not intend that Mr. McKim would hold the beneficial interest in the properties.[4] The court also made an undisputed finding that a fiduciary relationship existed between the McKims. Mrs. McKim therefore put her trust in Mr. McKim when

---

**2.** It is evident that our statement in *Garcia v. Marquez* was not intended to suggest that there *must* be an abuse of the confidential relationship to support a constructive trust. Rather, we merely noted that this was but *one* of the grounds commonly supporting the imposition of constructive trusts in the absence of fraud.

**3.** The existence of a confidential relationship has been viewed as excepting an oral trust from the Statute of Frauds, thus permitting enforcement of express oral trusts in land. *See* Bogert, *supra,* §§ 495, 496. New Mexico law treats an

oral trust in land as requiring a reconveyance to the settlor, notwithstanding the unenforceability of such a trust under the Statute of Frauds. *See* NMSA 1978, § 46–2–13 (Repl.Pamp.1989).

**4.** With respect to the Ridgecrest property, this finding was implied in the court's finding that the McKims agreed that Mr. McKim would hold title as security for repayment of the amount he advanced to pay off her indebtedness on the property.

she transferred the properties upon the understanding that equitable ownership remained in her. She thus held an equitable claim of title to the properties, which was properly enforced by way of a constructive trust. We also agree with the trial court that, given these circumstances, the estate would be unjustly enriched if permitted to retain the properties. The court properly imposed constructive trusts to prevent such unjust enrichment. *Bassett v. Bassett*, 110 N.M. 559, 566, 798 P.2d 160, 167 (1990) (" 'A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.' ") (quoting 5 Scott, *supra*, § 462).

The trial court's imposition of constructive trusts was supported by other grounds as well. Both of the Restatements cited above provide that a constructive trust is proper where the transferee refuses to abide by an oral promise to hold title "as security for an indebtedness of the transferor."[5] *Restatement (Second) of Trusts* § 44(1)(c); *Restatement of Restitution* § 182(c). Although in this case there was an explicit finding of an agreement to hold title as security only with respect to the Ridgecrest property, the trial court could have fairly inferred that the McKims intended the same thing as to the Yale property. The deed was executed solely to facilitate refinancing the property and to protect Homes's equity in it, and the court implicitly found a lack of donative intent on the part of Mr. McKim when it imposed an equitable lien in his favor against the Yale property for the amounts he advanced. We recognize that in this case there was no "refusal" by Mr. McKim to uphold the oral understandings to hold the properties as security for repayment, as the *Restatement* provisions quoted above contemplate. However, such a refusal is also contemplated for application of the sections permitting a constructive trust where a confidential relationship exists. *Restatement (Second) of Torts* § 44(1)(b); *Restatement of Restitution* § 182(b). As the comments to each of these subsections clearly indicate, the death of the intended trustee, coupled with the absence of any evidence that the trustee intended to repudiate the trust, may substitute for the "refusal" requirement and justify application of the sections. We therefore believe that Mrs. McKim held an equitable claim to the property and that the estate would be unjustly enriched if it were permitted to retain any proceeds from its sale greater than the amount advanced by Mr. McKim.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

RANSOM and BACA, JJ., concur.

5. Although an agreement to transfer property by deed as security for repayment of a debt is typically enforced under the well-established maxim that "a deed absolute in form may be shown by parol testimony to have been given as a mortgage," *Boardman v. Kendrick*, 59 N.M. 167, 173, 280 P.2d 1053, 1057 (1955), Mrs. McKim did not rely on this theory in the court below and we consequently do not address it here.

Another theory not raised by the appellees on this appeal, or relied on in the court below, is that of a resulting trust. A resulting trust would seem appropriate in a case like this, where the trial court made express findings that Mr. and Mrs. McKim's intention was that he would hold the properties for her benefit. *See, e.g., McCord v. Ashbaugh*, 67 N.M. 61, 65, 352 P.2d 641, 644 (1960) ("A resulting trust arises when the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition or from accompanying facts and circumstances that the beneficial interest is not to go, or be enjoyed, with the legal title."). However, the issue not having been raised, we do not comment further upon it.