This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**DAVID MCWILLIAMS, Personal Representative of the ESTATE OF RUTHENE MCWILLIAMS, Deceased, and DANA UTTON, Successor Trustee of the LELA D. SCOTT LIVING TRUST under Revocable Declaration of Trust Agreement dated May 5, 1995,**

Plaintiffs-Appellants,

v.                                                                                    NO. 33,137

**MARY MARGARET JENSEN, Individually, as Trustee of the LELA D. SCOTT LIVING TRUST under Revocable Declaration of Trust Agreement dated May 5, 1995, as Trustee under Trust Agreement dated July 14, 1988 a/k/a DON Y. and MARY M. JENSEN LIVING TRUST dated July 14, 1988 (as amended),**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Karen L. Townsend, District Judge**

Caren I. Friedman
Santa Fe, NM

Richard T. C. Tully
Farmington, NM

for Appellants

Lorenz Law
Alice T. Lorenz
Albuquerque, NM

Risley Law Firm, P.C.
Gary Risley
Farmington, NM

for Appellees

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1}     Plaintiffs appeal the district court's rulings and judgment denying the relief they requested in this case. We address three issues on appeal: (1) whether the district court erred in granting summary judgment on Plaintiffs' claims of incapacity and undue influence, (2) whether the district court erred in concluding that Plaintiffs do not own an easement by prescription across Defendants' lands, and (3) whether the district court erred in finding that the statute of limitations barred several of Plaintiffs' claims for breach of fiduciary duty. We affirm.

**BACKGROUND**

**{2}** Because this is a memorandum opinion and because the parties are familiar with the case, we set forth only the district court's findings in this section, and we reserve discussion of the remaining facts for our analysis of the issues on appeal.

**{3}** In May 1995, Lela D. Scott (Lela) signed a Revocable Declaration of Trust Agreement establishing the Lela D. Scott Living Trust (the Trust). Lela and Mary Margaret Jensen (Mary) were co-trustees, and Lela was the sole beneficiary during her lifetime. Upon her death, the beneficiaries of the Trust were Lela's three daughters, Mary, Ruthene McWilliams (Ruthene), and Betty Jo Wright (Betty Jo), who would each receive a one-third interest upon Lela's death. Lela died on December 17, 2000.

**{4}** In 1999, Lela entered into a lease with Walter Bump and Cecil Henry as lessees (the Lease) for the purpose of developing a sand and gravel pit located on the Scott property. The Lease was subsequently extended pursuant to an option on January 13, 2004, and again on July 20, 2009. The lessees accessed Lela's property via a road across Mary's adjacent property, and Mary and her husband were paid an access fee. The Plaintiffs accepted their share of the proceeds of the Lease without protest from 2001 until this case was filed in January 2009.

**{5}** After Lela died, Mary became the trustee. Lela's attorney, Haskell D. Rosebrough, sent Ruthene a letter dated January 21, 2002. The letter provided a full accounting of the Trust and Estate and included a copy of the Trust, the Lease, and

information regarding the charges made by and paid to Mary and her spouse for use of a road across their property. Mary failed to provide a semi-annual accounting, as required by the Trust, with regard to the Trust property. However, she executed a deed transferring the one-third mineral interest required by the Trust to Ruthene on August 14, 2008, and, during the pendency of this case, disbursed Trust funds to the beneficiaries that were in a certificate of deposit and in a small bank account in the name of the Trust.

{6}     Plaintiffs disputed the need for payment of access fees to Mary and Don and claimed that the Trust property could be accessed via a track that was part of the Trust property. The district court found that there was no reasonable or practicable means of access to the Scott property from the highway and that an adequate road could not be built on this track. Moreover, the court concluded that Plaintiffs' use of the roadway across Mary and Don's property was permissive to access the Scott property and that Lela had allowed Mary and Don to collect a fee to use the road for many years.

{7}     Based on the above findings, the district court concluded that, although Mary breached her fiduciary duty by continuing to hold trust assets and failing to file a semi-annual accounting, Plaintiffs' other claims for breach of fiduciary duty were time barred. In addition, the court concluded that adverse use of Mary and Don's roadway

could not be established and, therefore, Plaintiffs' claim for a prescriptive easement was denied. Plaintiffs' claims of incapacity and undue influence had been previously disposed of by summary judgment in Defendants' favor. This appeal followed.

**DISCUSSION**

{8}     At the outset, before we discuss the arguments raised by Plaintiffs, we take a moment to consider the judicial headache that this case has caused on appeal. The complaint in this matter was filed in January 2009, and the parties vigorously litigated the case for the next four years, culminating in a seven-day bench trial. At the conclusion of the trial, the district court entered only a handful of findings and decided the majority of the issues on statute of limitations grounds, rather than on the merits. However, the court did not state what statute or statutes of limitation it was relying on to reach its conclusions leaving this Court to engage in unnecessary guesswork. Complicating the vacuum of information, the parties have failed to clarify the trial record in light of the issues presented on appeal, or to even address which statute of limitations should apply when the Uniform Trust Code, NMSA 1978, §§ 46A-1-101 to 46A-11-1105 (2003, as amended through 2011), was not enacted until three years after Lela's death. As a result, we are left without a cogent explanation of the issues, and both parties' arguments make it difficult to fully address the substance of the claims, particularly those relating to the alleged breaches of fiduciary duty.

**The District Court Did Not Err in Granting Summary Judgment on Plaintiffs' Claims of Incapacity and Undue Influence**

{9} "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Romero v. Philip Morris Inc.*, 2010-NMSC-035, ¶ 7, 148 N.M. 713, 242 P.3d 280 (internal quotation marks and citation omitted). The party moving for summary judgment must make a prima facie showing and come forward with "such evidence as is sufficient in law to raise a presumption of fact or establish the fact in question unless rebutted. The movant need not demonstrate beyond all possibility that no genuine factual issue existed." *Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶ 5, 111 N.M. 670, 808 P.2d 955 (citation omitted).

{10} Once the movant makes a prima facie showing, the party opposing summary judgment has the burden "to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Romero*, 2010-NMSC-035, ¶ 10 (internal quotation marks and citation omitted). "A party may not simply argue that such evidentiary facts might exist, nor may it rest upon the allegations of the complaint." *Id.* (alteration, internal quotation marks, and citation omitted). Instead, the "party opposing the summary judgment motion must adduce evidence to justify a trial on the issues." *Id.* (internal quotation marks and citation omitted).

{11} Although the parties collapse the claims of capacity and undue influence into one argument, issues of mental capacity and undue influence are in fact separate and distinct. *Roybal v. Morris*, 1983-NMCA-101, ¶ 23, 100 N.M. 305, 669 P.2d 1100. Thus, a person may be mentally competent, but a transaction performed by her may be invalidated if it is the result of undue influence. *Id.* ¶ 18.

{12} "The test of mental capacity is whether a person is capable of understanding in a reasonable manner, the nature and effect of the act in which the person is engaged." *In re Estate of Head*, 1980-NMCA-096, ¶ 15, 94 N.M. 656, 615 P.2d 271. In New Mexico "a person is presumed to be competent and the initial burden of proof of incompetency is upon the party challenging competency." *In re Estate of Taggart*, 1980-NMCA-129, ¶ 7, 95 N.M. 117, 619 P.2d 562; *see In re Estate of Head*, 1980-NMCA-096, ¶ 16. To show the contrary, the burden of proof rests on the person asserting lack of capacity to establish the same by clear and convincing proof. *Roybal*, 1983-NMCA-101, ¶ 13; *In re Estate of Head*, 1980-NMCA-096, ¶ 16.

{13} Undue influence, on the other hand, "is proven by showing that a person who has mental capacity to understand, and does understand, what [s]he is doing, and is compelled by artifice, force or fear to do, what [s]he does not want to do, and what [s]he would not otherwise do but for such influence." *Lebeck v. Lebeck*, 1994-NMCA-

103, ¶ 23, 118 N.M. 367, 881 P.2d 727 (internal quotation marks and citation omitted).

{14}     In their motion for summary judgment, Defendants argued that Lela was not incapacitated when she signed the Trust and the Lease, nor did Mary and her husband, Don Y. Jensen, exert undue influence over Lela to persuade her to sign those documents. They also asserted that the statute of limitations barred Plaintiffs' claim. Defendants set forth the following facts in support of their motion. Prior to forming the Trust, Lela and Plaintiff David McWilliams (David), the son of Ruthene, signed a Mineral Lease Agreement dated June 1, 1994, with Corn Construction Co. (Corn Lease) to mine and extract sand and gravel from the Scott land. David knew from the beginning that Corn Construction paid a fee for access through Mary and Don's property. All subsequent contracts entered into with Bump and Henry concerning sand and gravel production on the Scott property allowed for an easement charge. Although David, who holds a power of attorney on behalf of Ruthene, was not a party to those contracts, he was familiar with the terms and provisions by at least November 1, 2001.

{15}     Defendants also provided evidence that Lela had the capacity to understand and agree to the terms of the contracts she signed at the time she signed them. Further, Lela was represented by Rosebrough throughout the time that she was signing the

8

contracts, and she was competent to execute the Trust in 1995. In addition, in January 2002, Rosebrough explained the basis of the easement payment.

{16} Plaintiffs' response disputed the facts set forth by Defendants concerning Lela's capacity. Specifically, Plaintiffs stated that Lela was eighty-seven years old at the time she signed the Trust; she "had a failing mind for many years, starting in 1988 when she was [eighty] years old"; Rosebrough prepared the language in the Trust requiring the signature of Mary as a Trustee or co-trustee; a notice of trust stating the signature requirements for the Trust was filed in the San Juan County records; Lela had only a seventh grade education; and when she signed the 1999 Lease, she was ninety-one years old and had memory problems.

{17} After reviewing the briefs and hearing oral argument, the district court granted Defendants' motion for summary judgment on the incapacity and undue influence claims. Although the district court did not give a basis for its decision, we conclude that it properly granted summary judgment because there were no genuine issues of material fact for trial.[1] Thus, viewing the facts in the light most favorable to Plaintiffs,

---

[1]Although we base our decision on Plaintiffs' failure to raise any issue of material fact, we are persuaded that their claim would similarly be barred by the applicable statute of limitations, which provides that, at the latest, a person must commence a proceeding to contest the validity of a trust that was revocable at the settlor's death within three years after the settlor's death. Section 46A-6-604(A)(1).

9

we cannot say that Plaintiffs raised any issue of material fact warranting a trial on their claims of capacity and undue influence.

{18} Here, Plaintiffs disputed Defendants' assertion that Lela had the capacity to understand and agree to the terms of the Trust and Lease but provided no evidence to establish—and made no argument—that Lela was not mentally sound at the time she executed those documents. As we have noted, a person is presumed to be competent and the burden of proof of incompetency is on the party challenging competency by clear and convincing evidence. *Roybal*, 1983-NMCA-101, ¶ 13. Plaintiffs have provided none. Aside from the lack of evidentiary support, we note that Lela executed the Corn Lease—to which David was a party—in 1994, just one year before she formed the Trust. And although Plaintiffs contend that Lela "had only a 7th grade education" and "had a failing mind for many years, starting in 1988 when she was [eighty] years old," they do not claim that Lela lacked the intelligence or had sufficient mind and memory to understand the nature and extent of that lease from which David benefitted. Summary judgment was properly granted on the issue of Lela's competency.

{19} Plaintiffs also failed to raise a dispute of fact concerning their claim of undue influence. In order to defeat Defendants' summary judgment motion on the issue, Plaintiffs were required to introduce admissible evidence showing that Mary and/or

Don's undue influence subverted or overpowered the mind of Lela at the time she signed the Trust and, later, the Lease. They did not meet their burden. Plaintiffs provided no evidence of specific circumstances surrounding the execution of either the Trust or Lease, nor did they contest that Lela was represented by competent counsel throughout the time that she was signing the various documents. Although there is evidence in the record that Lela suffered from old age and some loss of cognitive functioning, we conclude that these facts alone do not support an inference of suspicious circumstances regarding Lela's susceptibility to Mary and/or Don's influence or that Mary and/or Don substituted their own intent for Lela's. Moreover, general influence, however strong and controlling, is not undue influence unless brought to bear directly upon the act of signing the Trust and/or Lease. In this case, Plaintiffs have simply provided no evidence that the Trust or Lease, as finally executed, did not express the will and wishes of Lela, or that Mary and/or Don ever actually exerted undue influence with respect to the execution of the documents in question. Accordingly, the district court did not err in granting summary judgment on the issue of undue influence.

**The District Court Did Not Err in Concluding That Plaintiffs Do Not Own an Easement by Prescription Across Defendants' Lands**

{20} In New Mexico, "an easement by prescription is created by an adverse use of land, that is open or notorious, and continued without effective interruption for the prescriptive period [ ]of ten years[ ]." *Algermissen v. Sutin*, 2003-NMSC-001, ¶ 10, 133 N.M. 50, 61 P.3d 176. "On appeal, we decide whether substantial evidence supports the district court's findings and whether these findings support the conclusions that the elements required to establish [an] easement by prescription were . . . proved by clear and convincing evidence." *Id.* ¶ 9. We review the district court's conclusions of law de novo. *See Bd. of Trs. of Tecolote Land Grant v. Griego*, 2005-NMCA-007, ¶ 7, 136 N.M. 688, 104 P.3d 554 (stating that, in reviewing a determination of adverse possession, this Court reviews conclusions of law de novo). A prescriptive easement cannot grow out of permissive use. *Garmond v. Kinney*, 1978-NMSC-043, ¶ 3, 91 N.M. 646, 579 P.2d 178.

{21} The district court denied Plaintiffs' claim for a prescriptive easement. The court held that Plaintiffs' use of the roadway was permissive to access the Scott property and that Lela had allowed Mary and Don to collect a fee to use the road to access her property for many years. On appeal, though less than clear, we understand Plaintiffs' arguments as follows. First, they contend that, because Lela was subject to undue influence, she could not have understood that her use was limited nor was she "cognizant of the fact that she was paying 40% of her royalties for using the Jensens'

12

road." Since we have already concluded that the district court properly granted summary judgment in favor of Defendants on Plaintiffs' claim of undue influence, their argument on this ground cannot stand. Plaintiffs also appear to argue that, because the Jensens owned their land since the early 1950s and the road was used by Scott and Jensen family members as well as their predecessors and oil and gas companies and others for over fifty years, the use was adverse. We disagree.

{22}     As a threshold matter, Plaintiffs do not even identify the specific ten-year time period within which all of the elements of a prescriptive easement were presumably satisfied. *See Hester v. Sawyers*, 1937-NMSC-056, ¶ 13, 41 N.M. 497, 71 P.2d 646 (holding that "the period of use necessary to create an easement by prescription is ten years"); *Algermissen*, 2003-NMSC-001, ¶ 10 (same). More importantly, Plaintiffs have not shown that their use was adverse and under a claim of right, and they point to no specific facts that would demonstrate they established each element of a prescriptive easement by clear and convincing evidence at trial.

{23}     An adverse use in the context of prescriptive easement cases is "a use made without the consent of the landowner" and "the type of use that would normally give rise to a cause of action in tort." *Algermissen*, 2003-NMSC-001, ¶ 11. Although we acknowledge that it may be difficult in many cases to prove adversity due to the passage of time, a series of presumptions can be employed by the fact finder when

13

deciding whether a use was adverse or permissive in nature. *Id.* One such presumption involves evidence of permission granted by the landowner. Specifically, our Supreme Court stated in *Algermissen* that "a use that has its inception in permission will be presumed to continue to be permissive, until a distinct and positive assertion of a right hostile to the owner is brought home to him by words or acts." *Id.* (internal quotation marks and citation omitted). The Court further indicated that a landowner is not required to present evidence demonstrating that he or she gave "express permission" to defeat a prescriptive easement claim; evidence of implied permission is sufficient. *Id.* ¶ 12. Thus, "if a use has its inception in permission, express or implied, it is stamped with such permissive character and will continue as such" until the claimant asserts a right hostile to the owner by words or acts. *Id.* (emphasis, alteration, internal quotation marks, and citation omitted).

{24}     The district court here found that the use was permissive and rejected Plaintiffs' proposed findings to the contrary. The evidence at trial supported the district court's conclusion. Mary testified that no one, including her parents, had used the road without permission. Further, the City, the electric company, and oil and gas lessees all accessed the property with permission. The Jensens, who had entered into oil and gas leases in the 1950s, gave permission to their lessees to use the access road to the well sites, and their successors continue to maintain and use that access under access

agreements, which David conceded was with permission. In addition to finding the use of the roadway to access the Scott property was historically permissive, the district court concluded that the fact Lela was willing to pay an access fee to Don, first under the Corn Lease, and later under the 1999 Lease was further evidence that her use was by permission.

{25}     Where the district court finds against the party with the burden of proof, we will affirm the ruling if it was rational for the fact finder to disbelieve the evidence offered in support of the contrary finding. *State ex rel. Dep't of Human Servs. v. Williams*, 1989-NMCA-008, ¶ 7, 108 N.M. 332, 772 P.2d 366 (stating that "[e]ven in a case involving issues that must be established by clear and convincing evidence, it is for the finder of fact, and not for reviewing courts, to weigh conflicting evidence and decide where the truth lies"). Plaintiffs have set forth no evidence on appeal that anyone used the Jensen's road without some form of permission. Moreover, we agree with the district court's conclusion that Lela's payment to the Jensens for access to the road, which we assume was within the prescriptive period, amounted to permission to use the roadway. That permission necessarily negates Plaintiffs' assertion that the usage took place under any claim of right. Because they have failed to prove the legal elements required for the creation of a prescriptive easement, we must hold that Plaintiffs failed in their claim.

**Plaintiffs' Claim for Breach of Fiduciary Duty Was Properly Barred**

{26}    Before we turn to our analysis, we must note that Plaintiffs' brief in chief, much like their argument below, is difficult to understand. They vaguely characterize the breaches of fiduciary duty, and it is not entirely clear what they are appealing. Defendants' answer brief does little to clarify the issues. We thus rely on the district court's letter decision as our guide and confine our discussion accordingly. The court summarized Plaintiffs' claim for breach of fiduciary duty as follows: (1) Mary failed to require the pit operator to build a road over the Scott access easement and allowed a "toll charge" over the Jensen property; (2) Mary failed to transfer the mineral interest to Plaintiffs prior to August 14, 2008; (3) Mary failed to inspect the property or improperly delegated this duty to Bump and Henry; (4) the Bump and Henry contracts were extended in 2004 and 2009 without input from the other beneficiaries; and (5) Mary failed to distribute all trust assets and provide semi-annual accountings.[2]

{27}    The district court ruled that, with the exception of the distribution of trust assets and semi-annual accountings, the remaining claims were barred by the statute of limitations. With respect to the remaining assets and accountings, the court concluded

---

[2]To the extent that Plaintiffs argue there are additional breaches of fiduciary duty, they fail to set forth with specificity the claims they are asserting or what evidence was presented at trial. "We will not search the record for facts, arguments, and rulings in order to support generalized arguments." *Muse v. Muse*, 2009-NMCA-003, ¶ 72, 145 N.M. 451, 200 P.3d 104.

that Plaintiffs had shown an ongoing breach and ordered Mary to immediately distribute all trust assets and provide semi-annual accountings. We address the four claims that were not resolved in Plaintiffs' favor.

**Breach of Fiduciary Duty for Failing to Require the Pit Operator to Build a Road Over the Trust's Easement and for Charging an Access Fee**

{28} Separate from our observation above concerning the lack of clarity in the briefs, this particular claim appears to have an added wrinkle. In its letter decision and in the subsequently filed amended findings of fact and conclusions of law, the district court stated that Plaintiffs' claim for breach of fiduciary duty for failing to require the pit operator to build a road over the Trust property's easement and for the inappropriate "toll charge" were time barred. Yet in their motion for reconsideration, Plaintiffs claimed that they "did not and have not asserted a claim that Defendant Mary Margaret Jensen as Trustee of the Lela D. Scott Trust breached her fiduciary duty by not requiring the pit operator to build a road." Instead, they argued, all evidence relating to the thirty-foot parcel concerned only their claim of prescriptive easement. The district court denied Plaintiffs' motion for reconsideration without discussion and without addressing Plaintiffs concession regarding the road. Now, however, Plaintiffs ignore their admission and argue that the failure to build a road over the thirty-foot parcel *is* at issue.

17

**{29}** Even if we consider this issue as properly raised, we conclude that the district court did not err in dismissing Plaintiffs' claim concerning the road and the "toll charge" albeit for a different reason. *See State v. Vargas*, 2008-NMSC-019, ¶ 8, 143 N.M. 692, 181 P.3d 684 ("Under the 'right for any reason' doctrine, we may affirm the district court's order on grounds not relied upon by the district court if those grounds do not require us to look beyond the factual allegations that were raised and considered below." (internal quotation marks and citation omitted)). We do not reach the statute of limitations issue because Plaintiffs had no cause of action against Mary for actions taken during Lela's lifetime. We explain.

**{30}** As a general matter, a fiduciary duty is a duty of loyalty. *See In re Estate of McKim*, 1991-NMSC-019, ¶ 20, 111 N.M. 517, 807 P.2d 215; *Trujillo v. Puro*, 1984-NMCA-050, ¶ 17, 101 N.M. 408, 683 P.2d 963. Since "[a] fiduciary is obliged to act primarily for another's benefit in matters connected with such undertaking[, a] fiduciary breaches this duty by placing his interests above those of the beneficiary." *Kueffer v. Kueffer*, 1990-NMSC-045, ¶ 12, 110 N.M. 10, 791 P.2d 461 (internal quotation marks and citation omitted). In order to breach such a duty, however, a fiduciary relationship must exist in the first place, and the only fiduciary duty that existed with respect to this issue was to Lela.

18

{31}     As we have noted, Lela created the Lela D. Scott Living Trust pursuant to a Revocable Declaration of Trust Agreement in May 1995 and was the sole beneficiary until her death in December 2000. Thus, as long as Lela was alive, Plaintiffs' interest in the Trust was contingent only, and Lela could eliminate that interest at any time. Two provisions of the Trust are pertinent to our discussion. First, Articles 3.1 and 3.2 provide that Lela, as settlor, could revoke, amend or modify the Trust for any reason. *See* §§ 46A-1-103(O); 46A-6-602(A). Second, Article 5.1 provides that all income—from whatever means chosen—during Lela's lifetime was for her "care and support." In our view, both the UTC and these provisions demonstrate that Lela, as trustee, owed a duty to herself only as the Trust's settlor and primary beneficiary. In addition, Mary, as co-trustee, owed a fiduciary duty exclusively to Lela during Lela's lifetime, not to the remainder beneficiaries. *See* § 46A-6-603(A). It was not until Lela died that the Trust became irrevocable, and Plaintiffs' interest in the Trust vested at which point they could bring a proceeding against the trustee for an alleged breach of trust. *See* § 46A-6-601 (treating a revocable trust as a functional equivalent of a will thereby reinforcing that a trustee's duties run only to the existing beneficiary while the trust remains revocable).

{32}     As the sole beneficiary of the Trust during her lifetime, Lela and Mary as co-trustees had broad powers with regard to the Trust property. Consistent with those

19

powers, we conclude that Lela had the authority to sign the 1999 Lease with Bump and Henry for the right to extract sand and gravel from the pit on the 163 acres of Trust lands. The Lease provided that "Don Jensen is the Lessor of the land containing the access road to the property containing the gravel deposit." Although the Lease did not state how much would be paid for an easement access fee, it nevertheless granted the right of ingress and egress over Don's land adjacent to the premises just as the prior Corn Lease had done. There is no evidence in the record that Lela did not have knowledge of or did not approve of the royalty payments to Mary and Don for use of the road.

{33} In sum, Lela as trustee owed a duty only to herself, and Mary, as co-trustee, owed a duty only to Lela. As the Trust's primary beneficiary, Lela was entitled to use the Trust assets for her own benefit, and entering into the Lease benefitted Lela by providing her with money for her care while keeping the Trust lands in the family. The Lease agreement did not breach any duty to Lela's remainder beneficiaries because neither she nor Mary owed them a duty. Accordingly, we conclude that Mary had no obligation to protect Plaintiffs' interests during Lela's lifetime and that any claim for breach of fiduciary duty for the trustees' decision not to require the pit operator to build a road over the Trust's easement and to allow payment of an access fee under the Lease must fail.

20

**Breach of Fiduciary Duty for Failing to Inspect the Property or Improperly Delegating This Duty to Bump and Henry**

{34} Plaintiffs argue that Mary breached her fiduciary duty by delegating the obligation to inspect the property to Bump and Henry because "[a]ppointing the lessees to manage and protect Lela's interests is like appointing a fox to guard a henhouse." As with the Lease, however, Lela signed the agent/manager agreement appointing Bump and Henry to "manage and protect [Lela and Don's] interest" on the property being mined in July 1999. And as we have discussed above, both the Trust terms and the Uniform Trust Code limit the persons to whom the duty to inform and report is owed while a trust is revocable. Here, the only affirmative obligation imposed on Mary with respect to the agent/manager agreement was to Lela. At eighty-seven years old, Lela's decision to have Bump and Henry manage the property without compensation clearly helped her, and she was free to enter into that agreement on whatever terms she desired, without breaching a duty to the remainder beneficiaries. Finally, Mary's duty extended to acting pursuant to Lela's directions and on Lela's behalf, and she therefore violated no duty to Ruthene or Betty Jo.

**Breach of Fiduciary Duty for Extending the Bump and Henry Contracts in 2004 and 2009 Without Input From the Other Beneficiaries**

**{35}** As with each of the breach of fiduciary claims herein, this one is also vague at best. In their closing argument, Plaintiffs argued that Mary breached her fiduciary duty by failing to inform Ruthene that the Lease would be renegotiated and by failing to give her an opportunity to provide input or to participate in the renegotiation. The district court's letter ruling framed the issue as follows: "Plaintiffs contend that Defendant breached her fiduciary duty by extending the Bump/Henry contract in 2004 and 2009." The court concluded that there was no breach because Plaintiffs "acquiesced in the lease and extensions by collecting the disbursements under the lease since 2000." It is unclear what happened next because the district court did not enter findings or rule on this particular issue in its subsequently filed amended findings of fact and conclusions of law. On appeal, although Plaintiffs briefly mention that the district court's letter ruling on statute of limitations grounds was erroneous, they do not specifically argue how Mary's conduct regarding the renegotiation of the Lease constituted a breach of fiduciary duty.

**{36}** Even if we were to consider the issue properly before us, we conclude that Plaintiffs have not demonstrated that Ruthene was entitled to provide input or participate in the renegotiation of the Lease. First, the 1999 Lease, which Plaintiffs had in their possession by at least November 2001, and which was executed during Lela's lifetime, provided that the "Lessee *shall* have the option to extend this Lease

22

for [an] additional term of five (5) years at this time the terms, conditions, and rates will be renegotiated." (Emphasis added.) Thus, it is clear from the Lease itself that the renewal option was not discretionary and that if Bump and Henry wanted to exercise the option, Mary or her agents—in this case Rosebrough—had to engage in negotiations with them. Furthermore, Plaintiffs were aware that negotiating the renewal option was mandatory as early as 2001, yet they did nothing in the intervening years until the lawsuit was filed in 2009.

{37}     More importantly, however, nothing in the Trust required Mary as trustee to notify the beneficiaries or solicit their input with regard to the Lease. In fact, the Trust specifically delegated to her the power and discretion to enter into such negotiations. Consequently, there was no breach of fiduciary duty for failing to inform Ruthene about, or excluding her from, the renegotiation of the Lease.

**Breach of Fiduciary Duty for Failing to Transfer the Mineral Interest to Plaintiffs Prior to August 14, 2008**

{38}     The district court concluded that Plaintiffs' claim for breach of fiduciary duty for failure to transfer Plaintiffs' share of the mineral interest to Plaintiffs was time barred and that, in any event, Plaintiffs waived their claim by continuing to accept royalty payments based on the mineral interest. Specifically, the court found that Plaintiffs accepted their share of the proceeds from the Lease without protest from 2001 until this case was filed on January 9, 2009.

23

{39} We note first that Rosebrough wrote to Ruthene on January 21, 2002, and advised her that he had prepared the mineral deeds and that, subject to any requested change, the deeds would be signed and recorded. Six months later, on June 6, 2002, Rosebrough again wrote to Ruthene and stated that he had prepared the deeds of distribution, conveying one-third of the mineral interests to Mary and Ruthene. Rosebrough apparently retired in late 2004 without having recorded any of the deeds. The attorney who took over, prepared and filed a warranty deed for Mary assigning her one-third of the rights in February 2005. Mary executed a deed assigning one-third of the mineral interest to Ruthene on August 14, 2008, prior to the filing of the complaint. Although Plaintiffs had inquired about the deeds after Lela's death, and they received letters from Rosebrough indicating that he was preparing the documents, there is no evidence that they ever followed up with Rosebrough to determine whether the deeds had in fact been filed. In any event, Plaintiffs have not demonstrated any harm resulting from Mary's late filing of the deed as they continued to receive—and accept—their percentage of the royalties pursuant to the terms of the Lease. Accordingly, we conclude that, even if Mary breached her duty by failing to timely record the warranty deed transferring the mineral interests to Ruthene, Plaintiffs have suffered no damages, and their claim was properly denied.

**CONCLUSION**

{40} For the reasons set forth above, we affirm the decision of the district court.

{41} **IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**